Frank **PANZINO**, Joseph Polak and Anthony Fornari, Plaintiffs,

v.

**SCOTT PAPER COMPANY**, Defendant.

Civ. A. No. 85–3526(JFG).

United States District Court, D. New Jersey.

May 24, 1988.

---

Mary J. Maudsley, April & Maudsley, P.A., Somers Point, N.J., for plaintiffs.

John J. Mulderig, Brown & Connery, Westmont, N.J., Mark S. Dichter, Steven R. Wall, Philadelphia, Pa., for defendant.

## OPINION

GERRY, Chief Judge.

This is an action for wrongful discharge from employment. The three plaintiffs were employed by defendant at its Landisville, New Jersey facility. They were terminated in 1984 as part of Scott's "reduction in force" at Landisville.

The parties stipulate many of the facts. At the time of their termination, plaintiffs held the position of shift supervisor (Panzino & Fornari) or of area maintenance supervisor (Polak). They had no written employment contract of any kind with the defendant, nor was there a written agreement that plaintiffs would be entitled to "bump" hourly non-supervisory employees should they (plaintiffs) be terminated from their supervisory positions. The parties agree that plaintiffs were terminated because of the reduction in force; unacceptable job performance is not alleged.

The disputed facts follow: plaintiffs contend that shortly before they were laid off they were told, individually, that they would not lose their jobs as a result of the reduction in force. Rather, they would at worst have the opportunity to move to hourly wage positions. Plaintiffs assert that they relied on these promises, in ways which will be specified below. Defendant denies that the assurances were made.

This court has already dismissed two of the three counts of the complaint. Count I was for breach of an implied oral contract of employment for an indefinite period, terminable only for cause. We granted summary judgment as to that claim by unpublished opinion and order of April 21, 1987. On June 1, 1987 the court approved a stipulation of dismissal with prejudice as to Count III of the complaint.

Count II states a claim for wrongful discharge under New Jersey law. When the court granted summary judgment as to Count I we also granted summary judgment as to one of plaintiffs' two wrongful discharge theories, the claim that defendant breached the implied covenant of good faith and fair dealing when it laid off plaintiffs. *See* [Slip op. at 8–9.] The remaining theory of recovery is that because defendant assured plaintiffs continued employment, and plaintiffs relied on these assurances to their detriment, defendant was equitably estopped from laying plaintiffs off as part of the reduction in force. In denying defendant's motion to the estoppel theory we rejected the argument that equitable estoppel does not represent a clear mandate of New Jersey public policy and thus may not serve as the basis for a wrongful discharge claim under the public policy exception to the employment-at-will doctrine. [Slip op. 6–8.] However, we expressed no opinion as to whether the factual elements of the claim were present in the instant matter.

ANALYSIS

Presently before the court is defendant's renewed motion for summary judgment as to Count II of the complaint, the claim that the plaintiffs discharge violated a clear mandate of the public policy of New Jersey. Defendant makes two arguments. First, Scott contends that no equitable estoppel theory can be made out here because there is no claim that plaintiffs were terminated *because* they relied on assurances which the defendant later breached. Second, defendant argues that the record

will not support two essential elements of estoppel: (1) detrimental reliance and (2) knowledge on the part of Scott Paper of such reliance.

A. Equitable estoppel generally has three elements:

1) a representation (or misrepresentation);

2) knowledge, by the representor, that a second person is acting on the basis of the representation; and

3) substantial detrimental reliance by the second person on the representation.

See *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 339, 403 A.2d 880 (1979), *Atlantic City Housing Authority v. State of New Jersey*, 188 N.J. Super. 145, 149, 456 A.2d 534 (App.Div. 1983).

■ Defendant contends that to make out a claim under the public policy exception to the employment at will doctrine an equitable estoppel theory must add a fourth element: a causal connection between the actions taken in reliance and the discharge. This fourth element, defendant suggests, is present in the reported cases of estoppel in the wrongful discharge context. *e.g., Crowell v. Transamerica Delaval, Inc.*, 206 N.J.Super. 298, 502 A.2d 573 (Law Div.1984) (Employee's supervisor led him to believe that company wished him to ignore manufacturing defects, and employee was later discharged after permitting manufacture of defective pieces of equipment.) Courts have rejected, defendant contends, equitable estoppel/public policy exception claims where there is no causal link between the actions taken in reliance and the discharge. *e.g., Brunner v. Abex Corp.*, 661 F.Supp. 1351 (D.N.J.1986). In *Brunner* the plaintiff chose to relocate from New York to New Jersey after her employer moved its office there. Nevertheless, the employer discharged plaintiff right after she relocated, saying that her position had been eliminated as part of a reduction in force. The court dismissed the complaint, implying that without an allegation that the actions in reliance caused the termination, no action would lie. 661 F.Supp. at 1356–1358. Here defendant

points out that there is no alleged connection between the actions in reliance and the discharge; plaintiffs acknowledge they were discharged as part of the reduction in force. This admission compels summary judgment, defendant asserts.

The public policy exception to employment-at-will was first recognized under New Jersey law in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). There, a medical researcher refused to engage in certain research because she believed that research to be a potential violation of her Hippocratic Oath. In a wide-ranging opinion the New Jersey Supreme Court held generally that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. at 72, 417 A.2d 505. The court cited numerous opinions from both New Jersey and non–New Jersey courts. The paradigmatic case of wrongful discharge under the public policy exception, the court seemed to imply, occurs when an employee takes (or refuses to take) actions she/he believes to be ethically or legally compelled by a clear mandate of public policy, and is discharged because of the action or inaction. *See e.g., Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (discharge of an employee for a "socially undesirable motive" held compensable where employee had been fired for serving on a jury.)

But even if the paradigmatic case involves termination as a result of the employee's actions, it does not follow that the public policy exception is or should be limited to such instances. Indeed, the *Pierce* decision does not state that there must be a causal link between an employee's actions and the discharge to state a claim. Rather, "an employee has a cause of action for wrongful discharge *when the discharge is contrary to a clear mandate of public policy.*" And, although the *Crowell* plaintiff was discharged as a result of his actions (or, more precisely, his inaction) the *Crowell* court seemed to reject any reading of *Pierce* which would require a causal link, commenting, "the focus of the employee's cause of action is the discharge itself.

The claim is sustainable when the discharge violates public policy." 206 N.J.Super. at 302, 502 A.2d 573. Defendant cites no cases from New Jersey state courts which explicitly hold that there must be a causal connection between the discharge and actions of the plaintiff, and we have found none.

Nor does the *Crowell* case stand for the proposition that there must be a causal link between employee actions and discharge before the principles of equitable estoppel are triggered and the discharge becomes violative of public policy. The court in *Crowell* discusses at length the development of equitable estoppel in New Jersey common law, 206 N.J.Super. at 304–306, 502 A.2d 573, concluding that:

> It is not in society's interest to permit one to work an injustice upon another by repudiating an act done when the other has relied thereon in good faith. Thus, public policy supports a contrary position, the position which is reflected in the estoppel doctrine.
>
> Equitable estoppel is not only a rule of law, it is also a moral principle. Its absence would invite injustice, condone wrongdoing and permit the evasion of responsibility. Any conceivable definition of "public policy" as that term is used in *Pierce*, would have to embrace the concept.

206 N.J.Super. at 306, 502 A.2d 573.

Nothing in this conclusion or in the discussion which precedes it indicates the *Crowell* court's intent to alter the traditional elements of equitable estoppel in the employment context. If an employer makes a promise to an employee, and that employee reasonably relies upon that promise, to his detriment, *Crowell* provides that the employee may invoke equitable estoppel to prevent the employer's "evasion of responsibility." Thus, rather than requiring a causal connection between the promise relied upon and the discharge, *Crowell* elaborates the point, made originally in *Pierce*, that the focus of a wrongful discharge case is the discharge itself, not the absence or presence of a causal link between the employee's acts and the discharge.

Accordingly, we hold that a plaintiff need not show that he was discharged because of his actions taken in reliance in order to state a claim for wrongful discharge under *Pierce* and the principles of equitable estoppel.

■ **B.** Nevertheless, we will grant summary judgment on the wrongful discharge claims of all three plaintiffs because we find that the evidentiary record will not support a showing of detrimental reliance.

Defendant supplies the court with the depositions of all three plaintiffs, drawing the court's attention to claims of detrimental reliance which defendant argues are "speculative at best". For instance, plaintiff Fornari stated at deposition that had he known that he was to lose his job he immediately would have sought employment elsewhere. Dep. at 19[1] (Incidentally, it is useful to note here that Fornari was assured of continued employment two weeks before he lost his job.) But when pressed for proof about whether earlier applications would have resulted in his getting a new job earlier than he did, plaintiff acknowledged that he had no assurance of a job from any employer (Dep. at 23) and was not even sure which companies had had job openings at the time (Dep. at 25). In addition, Fornari said that he would not have allowed his barber's license to lapse had he known that he would lose his job, but when examined further on this plaintiff admitted that the license expired one year before he was laid off, which was many months before he received any assurances about continued employment. (Dep. at 17, 19)

Similarly, plaintiff Polak testified that he would have been hired sooner at a new job had he applied sooner. (Dep. at 22). This is true, Polak said, because it took a very long time for him to be hired by his present employer—he was unemployed from August 1984 to January 1986—so an earlier application surely would have resulted in earlier hiring. (Dep. at 26, 33) Pressed

---

**1.** Fornari was unemployed for four months after the lay off. Whether he seeks reinstatement at Scott or simply damages for his period of unemployment is not clear.

more closely for his reasons, plaintiff admitted that there was only a "possibility" that he would have been hired earlier. (Dep. at 29–30, 43–44) He made the same admission regarding openings at Scott's Chester plant. (Dep. at 32).

Plaintiff Panzino testified that he was out of work from May 1984 until September of the same year. He testified that some of the employers he applied to *may* have told him that had he applied earlier he would have gotten a job earlier. (Dep. at 23) Panzino's main claim, though, is that had he not been told his job was secure he would have applied for a loan to start a video business. (Dep. at 24) Had he made such application while employed, plaintiff contends, he would have received the loan. Once he had lost his job, though, his loan applications were doomed. (Dep. at 21). He testified that several of the banks which rejected his loan applications told him that if he had a job there would have been no problem. (Dep. at 30). Whether the loans would have been granted had the banks known that plaintiff, although employed, would soon be laid off, was a matter on which plaintiff could offer only speculation. *Id.*

Plaintiffs contend that the evidence adduced is sufficient to get to a jury on the question of whether there was harm to the plaintiffs by virtue of their reliance on defendant's assurances of continued employment. Surely it is not the court's job to decide on summary judgment that the plaintiffs suffered no harm, plaintiffs assert. This is an appealing argument, but we must respectfully disagree with it. It seems to us that the harm alleged in a case of equitable estoppel may cover a continuum from the very concrete and certain to the very speculative and uncertain. An example of one extreme of this continuum might be the situation in which a plaintiff has sought and received job offers, believing his present job to be in jeopardy, but turns down the new jobs after assurances of continued employment, only to lose the job later. *e.g., Shebar v. Sanyo Business Systems,* 218 N.J.Super. 111, 526 A.2d 1144 (App.Div.1987). In that instance the actions taken in reliance were obviously detrimental and the harm concrete and certain.

On the other extreme might be a situation in which a person says that had he known his job was in jeopardy he would have applied for other jobs, but he can't specify where he might have applied and he doesn't know whether other jobs were available in any event. A recovery in such a situation is obviously inappropriate.

The facts in the instant case seem considerably closer to the speculative end of the continuum. The plaintiffs can specify where they would have applied, but they can supply no evidence that earlier applications would have yielded jobs; indeed, they aren't even sure there were jobs to be had. Affidavits from the prospective employers, stating that other jobs were available during the period in question and/or that plaintiffs had the qualifications for certain positions, would show a greater probability that plaintiffs would indeed have been hired but for their reliance on the defendant's assurances. Without these affidavits the finder of fact is reduced to speculation—admittedly appealing and sympathetic speculation—about the plaintiffs' harm. Such guesswork is not an adequate basis for a finding of detrimental reliance; accordingly, we are compelled to grant summary judgment as to the equitable estoppel/wrongful discharge claim.

The motion for summary judgment is granted. The court will draw and enter an order.