Richard GRANT, Jr., Plaintiff,

v.

The COCA–COLA BOTTLING
COMPANY OF NEW YORK,
INC., Defendant.

Civ. A. No. 90–3146.

United States District Court,
D. New Jersey.

Oct. 16, 1991.

Beckerman & Beckerman by Richard J. Silberfein, South Orange, N.J., for plaintiff.

Schmeltzer, Aptaker & Shepard by Ira Michael Shepard, Katherine Brewer, Washington, D.C., and Saiber Schlesinger Satz & Goldstein by Robin B. Horn, Newark, N.J., for defendant.

## OPINION

BISSELL, District Judge.

Plaintiff, a New Jersey resident, originally filed this action on June 23, 1990, alleging tortious interference with contractual relations. Plaintiff subsequently amended that complaint to add interference with prospective economic advantage and the defendant, a New York corporation, filed a motion to dismiss all counts. The Court granted that motion on April 10, 1991, but provided the plaintiff with another opportunity to file a third amended complaint based on alternative legal theories.

Plaintiff filed his third amended complaint (hereinafter the "Complaint") on April 24, 1991 alleging in Count 1 that he is a third-party beneficiary of the Distributor Agreement executed by Coca–Cola with another distributor and that he suffered injury as a result of defendant's alleged breach of that Agreement. He alleges in Count 3 that he detrimentally relied on various representations made by the defendant in the course of applying for a distributor's route. Plaintiff also claims in Count 2 that defendant's rejection of his application was malicious and that he is entitled to punitive damages.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship and an amount in controversy exceeding $50,000). Presently before the Court is defendant's motion to dismiss the complaint or for summary judgment.

## FACTS

Plaintiff Richard Grant, Jr. works in the soft drink distributorship business. From June 1984 until February 1989 he was employed by Mike Badalto as an operations assistant for Badalto's Coca–Cola distributorship. Plaintiff earned $27,500 in annual salary plus medical benefits and an $80 monthly car allowance. Sometime in early 1989, plaintiff learned that Girolomo Ricciardi was interested in selling his Coca–Cola distributorship. That distributorship was governed by a Distributor's Agreement executed by Coca–Cola and Ricciardi in November 1985. (Ricciardi Decl., ¶ 3). Eager for advancement, Grant made inquiries and learned that he would have to apply to Coca–Cola for its approval of the purchase.

Paragraph 16 of the Distributor's Agreement between Coca–Cola and Ricciardi provides that:

So long as this Agreement is in effect, the Company will accept any substitute distributor produced by the Distributor to take over and perform this Agreement in place of the Distributor and will enter into a new Distributor's Agreement for the balance of the term hereof ... with such proposed substitute distributor, provided it shall to the satisfaction of the Company meet the requirements of the Company as to character, ability, financial responsibility and adequacy of equipment to discharge the obligations assumed by the Distributor hereunder.

(Compl., Count 1, ¶ 3).

According to the plaintiff, Coca–Cola's representatives told him that his "application would be looked upon more favorably" if he took an employment position with Ricciardi in order to obtain some familiarity with the route. (Grant Cert., ¶ 3). Plaintiff decided to take a job with Ricciardi, even though his salary would drop $200 per week, roughly a third of his previous salary. According to Grant, Badalto told him at the time of his departure that he "was sorry to see [him] go" and that his "old job was waiting for [him]." (Id.)

In February 1989, plaintiff submitted his application form to Coca–Cola requesting

the transfer of Ricciardi's Coca–Cola distributorship to Grant. As part of that application, plaintiff agreed to provide defendant with certain information, including proof of incorporation, an employer identification number, and evidence that the purchaser possessed equipment adequate to meet its obligations under the Distributor Agreement. (Brewer Decl. of 7/17/91, Exh. D at 6).

In addition, Coca–Cola required a signed contract of sale between Grant, the prospective purchaser, and Ricciardi, the current distributor. (*Id.*) That contract is expressly contingent upon Coca–Cola issuing to plaintiff a Distributor Agreement assigning the subject territory to plaintiff. (Brewer Decl. of 7/17/91, Exh. C, § 7(a)). The contract also requires plaintiff "to exercise his best efforts to fulfill the requirements for approval by Coca–Cola." (*Id.* at § 7(b)). This provision of the contract specifically required the plaintiff to "provide credit information, operate a COCA–COLA route under the supervision and approval of COKE management, submit to an interview, and fulfill such other requirements as are requested by COKE." (*Id.*)

On July 24, 1989, Joe Smyth, a Coca–Cola representative, prepared a written evaluation of plaintiff's qualifications for the distributorship and found that he ranked either "good" or "excellent" in all categories. (Attached to Grant Cert.) Plaintiff further reports that in August, Frank Madia, another Coca–Cola representative, informed him that he would have to undergo an interview with senior officers of Coca–Cola. According to Grant, he was told that the defendant had already decided to approve him and the upcoming interview was a "mere formality." (Grant Cert., ¶ 5). Plaintiff contends that in light of this assurance, he proceeded to fulfill the information requirements of the transfer application. (*Id.*)

During the summer and early fall of 1989, Badalto, plaintiff's former employer, reiterated his standing offer for Grant to return. Plaintiff refused, and in October he went forward with his final interview at the Coca–Cola offices in Carlstadt, New Jersey. At this meeting, Grant reports that he was told by Madia that he was "one of the best distributor prospects ever evaluated." (Grant Cert., ¶ 8). Another Coca–Cola representative told plaintiff that "he would make an excellent addition" to the company. (*Id.*) Then, on January 25, 1990, plaintiff received a letter from Coca–Cola rejecting his application.

After Coca–Cola turned down plaintiff's application, plaintiff resigned from Mr. Ricciardi's employ. Plaintiff never reapplied for his old position with Mr. Badalto. He filed the original complaint in this matter on June 23, 1990.

## ANALYSIS OF DEFENDANT'S MOTION TO DISMISS

■ Under Rule 12(b)(6), a claim will be dismissed if the moving party shows "beyond a doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All allegations set forth in the complaint must be accepted as true, *see Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and all reasonable inferences must be drawn in the claimant's favor, *see McKnight v. Southeastern Pennsylvania Transportation Authority*, 583 F.2d 1229, 1235–36 (3d Cir.1978).

■ Even if one accepts all of plaintiff's factual allegations and draws all reasonable inferences in his favor, the plaintiff has still failed to assert facts necessary to support his legal theories. Turning to the plaintiff's first count, he claims entitlement to status as a third-party beneficiary of the Distributor's Agreement, a prerequisite to his claim for Coca–Cola's breach in Count 1 of the complaint. Plaintiff cannot make out a valid claim for third-party beneficiary status.

■ In order to qualify as a third-party beneficiary, the claimant must show that the contract was "made for the benefit of [that] third party within the intent and contemplation of the contracting parties." *First National State Bank of New Jersey*

*v. Commonwealth Federal Savings and Loan Assoc.,* 610 F.2d 164, 170 (3d Cir. 1980) (citing *Gold Mills, Inc. v. Orbit Processing Corp.,* 121 N.J.Super. 370, 373, 297 A.2d 203 (Law Div.1972)). A third-party who merely stands to benefit from a contract is no more than an incidental beneficiary who incurs no contractual right to enforce the contract. *See In re National Molding Co.,* 230 F.2d 69, 72 (3d Cir.1956); *Restatement (Second) of Contracts* § 315 at 477 (1979).

■ Under New Jersey law, "the intention of the parties to recognize a right of performance in the third party is the critical factor that governs the characterization of the beneficiary...." *Berel Co. v. Sencit F/G McKinley Assoc.,* 710 F.Supp. 530, 537 (D.N.J.1989); *see also Air Master Sales Co. v. Northbridge Park Coop.,* 748 F.Supp. 1110, 1117 (D.N.J.1990) (noting New Jersey courts' reluctance to find third-party beneficiaries without an explicit indication that the party is intended to have a direct claim under the contract to enforce that benefit); *Brooklawn v. Brooklawn Housing Corp.,* 124 N.J.L. 73, 77, 11 A.2d 83 (1940) ("real test" is whether the contracting parties intended a third party to receive a benefit enforceable in court). Foreseeability of a prospective benefit to a third party is not enough to establish a third party's rights. As the United States Court of Appeals for the Seventh Circuit explained, interpreting New Jersey law:

> In order to establish third-party beneficiary status, a plaintiff must show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement. The plaintiff must show the benefit to the plaintiff was a consequence the parties affirmatively sought; in other words, the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter the contract.

*Corrugated Paper Products v. Longview Fibre Co.,* 868 F.2d 908, 912 (7th Cir.1989).

To determine the intent of Coca–Cola and Gerry Ricciardi in entering the Distributor's Agreement, New Jersey law directs the court to examine the terms of the agreement and the surrounding circumstances. *Berel,* 710 F.Supp. at 537. The court should construe the agreement as a whole, *see Nevets C.M., Inc. v. Nissho Iwai American Corp.,* 726 F.Supp. 525, 533 (D.N.J.1989), and look to the general purpose of the agreement to determine the sense of a particular clause. *See Krosnowski v. Krosnowski,* 22 N.J. 376, 126 A.2d 182 (1976). Following these principles of construction, it is clear from the Agreement that plaintiff was never intended as a third-party beneficiary.

Paragraph 16 of the Distributor's Agreement is the sole provision dealing with substitute distributors. The plain language of that provision does not grant or impliedly confer upon the substitute distributor any claim to enforce the agreement. In fact, the substitute distributor's very right of performance under the Agreement is contingent upon Coca–Cola's approval of the applicant. Thus, before the plaintiff could even begin to entertain the possibility of a claim under the Distributor's Agreement, he first must satisfy Coca–Cola's approval requirements, a hurdle he failed to pass.

■ Plaintiff lays heavy emphasis on a single word in paragraph 16, namely, that Coca–Cola will accept "any" substitute distributor...." (Plaintiff's Br. at 8). But plaintiff, rather obviously, omits the subsequent text of the same sentence which qualifies the acceptance by adding the defendant is so obliged, "provided [that the substitute distributor] shall, *to the satisfaction of the Company,* meet the requirements of the Company as to character, financial ability and adequacy of the equipment...." (Emphasis added). This paragraph, quoted in full, clearly does not confer third-party benefits on applicants for substitute distributorships.[1]

---

**1.** Paragraph 24 of the Distributor's Agreement strengthens the case against inferring a third-party beneficiary. That paragraph states that the Agreement "expresses fully the understanding and agreement between the Company and the Distributor, and both parties agree that there are no promises, terms, conditions, understandings, commitments or obligations in re-

■ Plaintiff has also failed to make out a valid estoppel claim in Count 3 of his complaint. The gist of plaintiff's theory is that he expended application resources and gave up the higher salary offered by his former employer because of assurances he received from Coca–Cola representatives that he would be approved for the distributorship. In order to state a claim of promissory estoppel, plaintiff must show that he incurred a definite and substantial detriment in reliance on the alleged representations of Coca–Cola. *See Panzino v. Scott Paper Co.*, 685 F.Supp. 458, 461–62 (D.N.J. 1988); *Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357, 1371 (D.N.J.1982); *Fairken Associates v. Hutchin*, 223 N.J.Super. 274, 280, 538 A.2d 465 (Law Div.1987). Even assuming, as we must at this stage, that defendant's representatives assured plaintiff of Coca–Cola's approval, the claim cannot survive dismissal because the plaintiff did not detrimentally rely on the representations.

■ Plaintiff's alleged detrimental reliance falls into two categories: application expenditures and foregone employment with Badalto. But neither constitutes a definite loss caused by defendant as required by the doctrine of promissory estoppel. *See Panzino*, 685 F.Supp. at 461–62. The application expenditures were required of the plaintiff under the transfer of distributorship application. In that application, which was filed in February 1989, well before any alleged assurances from defendants, plaintiff agreed to provide the items of information upon which he now bases his claim of detrimental reliance. Coca–Cola never asked the plaintiff to obtain anything that was not listed in the initial application. Plaintiff thus had an independent obligation to perform the application tasks, an obligation that was made clear well before any alleged representations. To suggest that he "followed through" on these previous, independent obligations because of defendant's subsequent representations would ignore the causation requirement of the promissory estoppel doctrine.

■ Plaintiff's second category of loss is the foregone employment opportunity with his previous company. But by his own assertion, the move to Ricciardi's firm was suggested by defendant as a measure to enhance his application and the plaintiff seized the opportunity with full knowledge that his planned purchase of the distributorship was contingent upon Coca–Cola's approval. The switch to Ricciardi's firm was never made a condition for approval. In addition, the Badalto opportunity remained open throughout the application process and even after plaintiff's rejection from Coca–Cola. But he never chose to return. Because the decision to leave and never return to his former employer was always Grant's own choice he fails to state a basis for the detrimental reliance element of a promissory estoppel claim.

Because the plaintiff has failed to establish either status as a third-party beneficiary of the Distributor's Agreement or the necessary elements of promissory estoppel, his complaint fails to state a claim upon which relief can be granted. Since the substantive claims fail, the Court also dismisses plaintiff's demand for punitive damages.

## CONCLUSION

In light of the foregoing, the Court grants defendant's motion to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(6).

---

spect of the subject matter of this Agreement except as set forth herein." Defendant has also introduced deposition testimony from both parties to the original Distributor's Agreement who concur in their view that the Agreement was not intended to confer third-party benefits. (Defendant's Br. at 8–9). However, because the text of the Agreement is clear, it is unnecessary to wander into the domain of extrinsic evidence to adduce the parties' intent.