226 N.J. Super. 74 (1988)
543 A.2d 954
RONALD G. LINN AND JEAN C. LINN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
BENEFICIAL COMMERCIAL CORPORATION, BENEFICIAL MANAGEMENT CORPORATION, BENEFICIAL LEASING GROUP INCORPORATED, BENEFICIAL CORPORATION, DEFENDANTS-RESPONDENTS. and THE XYZ CORPORATION, JOHN DOE AND ROBERT ROE (FICTITIOUS NAMES FOR PARTIES PRESENTLY UNKNOWN), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1988.
Decided April 4, 1988.
*75 Before Judges PETRELLA and BAIME.
Marshall L. Gates, attorney for appellants (Marshall L. Gates on the brief).
*76 Porzio, Bromberg & Newman, attorneys for respondents (John M. Newman and Jane M. Hanson on the brief); Epstein, Becker & Green of counsel (M. Elaine Jacoby on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from a summary judgment in favor of defendant, dismissing plaintiff's claim for wrongful discharge.[1] Citing Woolley v. Hoffman-La Roche, Inc., 99 N.J. 284 (1985), mod. on other grounds 101 N.J. 10 (1985), plaintiff contends that he was fired without good cause contrary to an implied promise of indefinite employment contained in a personnel manual distributed by defendant to management employees. The same argument was considered and rejected by the trial court on the basis that neither the employment contract nor the personnel manual precluded defendant from making a good faith business decision to eliminate plaintiff's management position during the course of an extensive corporate restructuring designed to combat severe financial problems. We agree that defendant's decision to eliminate plaintiff's position for valid economic reasons did not violate any express or implied promise contained in either the employment contract or the personnel manual. We affirm essentially for the reasons expressed by Judge Conforti in his oral opinion rendered on May 28, 1987.
The facts are not in dispute. Plaintiff commenced his employment with defendant on March 17, 1980, under a pre-printed contract which set forth his yearly salary and bound him to certain post-employment disclosure restrictions. The contract contained the following clause, regarding termination of employment:

*77 This contract may be terminated at any time by either party hereto upon five days written notice to the other, or in lieu of such notice when terminated by the Employer upon payment of five days salary to the Employee at the rate of salary in effect at the time of such notice; except that where the Board of Directors or Executive Committee of the Employer shall have fixed a definite period of time for the continuance of the Employee's services, this contract shall not be terminated, except for good cause, by either party hereto prior to the expiration of such period.
The contract contained no fixed term of employment. Under its terms, plaintiff's employment could be terminated for any reason.
Plaintiff consistently received excellent job performance reviews. On this basis, he was permitted to execute a "golden parachute agreement," guaranteeing him three years of employment in the event of a "hostile takeover"[2] and was accorded the right to participate in defendant's stock option program for "key employees." Ultimately, plaintiff was promoted to the position of controller, requiring him to transfer from defendant's New York City offices to its headquarters in Peapack, New Jersey. In accepting the promotion, plaintiff moved his residence to this state, defendant paying the requisite expenses and assisting in the mortgage obligation.
During this period, plaintiff was aware of defendant's precarious financial condition. Indeed, plaintiff participated in preparing plans for restructuring the corporation and "cutting back" expenses. In February 1984, defendant decided to eliminate the position of controller as a part of the general reorganization of the company. In the corporate restructuring, the duties of controller were consolidated with those of the chief financial officer or were delegated to others. The position itself was eliminated. On April 6, 1984, defendant advised plaintiff that his employment was terminated. Plaintiff was granted accrued vacation pay and 60 days severance compensation.
*78 In effect at the time of plaintiff's employment was a "Managerial Policies Manual" which was distributed to all "key employees." It provided that employee terminations fell "into three basic categories," resignations, releases and retirements. It further contained a section entitled "Discipline and Release Policy," which specified the procedure to be followed in the event of poor employee performance. The manual was silent on the subject of elimination of positions for economic reasons.
Plaintiff argues here, as he did in the trial court, that the policy manual contained an implied promise of indefinite employment and modified the terms of the "at-will" provision set forth in the pre-printed contract. Because reorganization for business reasons was not expressly provided as a basis for job termination, plaintiff claims that he was wrongfully discharged. He contends alternatively that defendant was barred from terminating his employment under the doctrine of "equitable" or "promissory" estoppel. We reject both contentions.
Initially, we find no merit in plaintiff's argument that the managerial personnel manual precluded defendant from eliminating his position and terminating his employment. Plaintiff's reliance on Woolley v. Hoffmann-La Roche, Inc., supra, is clearly misplaced. The issue presented in Woolley was whether a personnel manual constituted a contract enforceable against an employer, where it purported to define the causes of termination and set procedural guidelines in cases of discharges for cause. The Supreme Court held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." 99 N.J. at 285-286. In so holding, the Court stated that "[a] policy manual that provides for job security grants an important, fundamental protection for workers" *79 and "[i]f such a commitment is indeed made, obviously an employer should be required to honor it." Id. at 297.
The Court took pains to note, however, that "[t]he contract arising from the manual [was] of indefinite duration," but was not an "extraordinary `lifetime'" agreement, completely barring the employer from terminating the employee. Id. at 301 n. 8. In this respect, the contract was said not to purport "to protect the employment against any termination...." Ibid. Rather, the Court noted that the implied promise contained in the manual was to safeguard "the employment only from arbitrary termination." Ibid. The Court stated that "when business circumstances require a general reduction in the employment force," "eliminat[ion] [of] positions," or termination of functions, a discharge "in pursuit of legitimate business objectives" was not prohibited. Ibid. See also Ware v. Prudential Ins. Co., 220 N.J. Super. 135, 146 n. 6 (App.Div. 1987).
While Woolley has been applied broadly in a variety of factual patterns, see, e.g., Shebar v. Sanyo Business Systems, 218 N.J. Super. 111 (App.Div. 1987), certif. granted 108 N.J. 667 (1987); 121 N.J.L.J. 549 (1988); Giudice v. Drew Chemical Corp., 210 N.J. Super. 32 (App.Div. 1986), certif. den. 104 N.J. 465 (1986), we do not read the Court's opinion as barring an employer from eliminating a position and terminating employment of a worker in furtherance of a legitimate business objective. Although the "at-will" rule "has come under severe criticism," Woolley v. Hoffman-La Roche, Inc., supra, 99 N.J. at 290, and its reach has been narrowed significantly, see Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980), it has also been recognized that "[e]mployers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy." Id. at 71. The progression of history is replete with examples of technological and business innovations which have created new markets and destroyed old ones, thereby necessitating changes and shifts in *80 the work force. Absent an express or implied promise to the contrary, we cannot and should not compel a business to operate at a loss and risk insolvency in the interest of job security. Clearly, such a policy would be self-defeating.
We thus hold that an action for wrongful discharge does not generally lie for one whose loss of work is actuated by elimination of the job itself due to legitimate economic or business reasons, and not as a bad faith pretext to arbitrarily terminate the employee. We note that other jurisdictions have reached the same conclusion. Brunner v. Abex Corp., 661 F. Supp. 1351, 1355 n. 3 (D.N.J. 1986); Valles v. Arizona Bd. of Regents, 154 Ariz. 450, 452, 743 P.2d 959, 961 (Ct.App. 1987); Clutterham v. Coachmen Industries, Inc., 169 Cal. App.3d 1223, 1227-28, 215 Cal. Rptr. 795, 797 (Ct.App. 1985); Telesphere Intern., Inc. v. Scollin, 489 So.2d 1152, 1153 (Fla.Ct.App. 1986), rev. den. 500 So.2d 546 (Fla.Sup.Ct. 1986); Nork v. Fetter Printing Co., 738 S.W.2d 824, 827 (Ky. Ct.App. 1987); Sabetay v. Sterling Drug, Inc., 114 App.Div.2d 6, 9, 497 N.Y.S.2d 655, 656-657 (App.Div. 1986), aff'd 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (Ct.App. 1987). We find no error in the trial court's determination.
We are equally unpersuaded by plaintiff's contention that defendant was equitably estopped from terminating his employment. The simple and overriding fact is that defendant kept every promise it made to plaintiff. It cannot fairly be said that an employer commits itself to keep an employee indefinitely by promoting him, asking him to transfer and assisting him with expenses. See Brunner v. Abex Corp., supra, 661 F. Supp. at 1358; Sabetay v. Sterling Drug, Inc., supra, 114 App.Div.2d at 9-10, 497 N.Y.S.2d at 657.
Accordingly, the summary judgment dismissing plaintiff's claim is affirmed.
NOTES
[1] In the complaint, plaintiff's wife sought damages for loss of consortium. The trial court dismissed this claim on the basis of Cappiello v. Ragen Precision Indus., Inc., 192 N.J. Super. 523, 532 (App.Div. 1984). No argument is made here challenging the dismissal of the per quod count.
[2] Plaintiff concedes that no "hostile takeover" occurred, triggering the right to three years employment.