Rolland JONES, William Eichler, Kathy Smiley, Heber R. Cantrell, John H. Barton, James A. Cole, Thelma Gordon, Linda Duncan, David Lowther, Helen McAleese, David W. Davis, Leroy Sturgeon, Scott Miller, Roger B. Englert, Jack B. Hall, William W. Hempel, Dennis Allen, Albert D. Vincent, Joseph Turner and Dorothy Lee,

v.

UNISYS CORPORATION, a Delaware corporation.

No. 91–C–1291–S.

United States District Court, D. Utah, C.D.

Aug. 16, 1993.

Allen K. Young, Young & Kester, Springville, UT, for plaintiffs.

James W. Stewart, Michael Patrick O'Brien, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, John J. Bogan, Unisys Corp., Blue Bell, PA, for defendant.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the Court on defendant Unisys Corporation's (Unisys) Motion for Summary Judgment. A hearing on this matter was held August 6, 1993 at 10 a.m. Plaintiffs were represented by Allen K. Young, Esq. and Jerald Wilson, Esq.. Michael Patrick O'Brien, Esq. and James Stewart, Esq. appeared on behalf of defendant Unisys.

The Court has given thoughtful and extensive consideration to the arguments set forth in the parties' memoranda and offered at the hearing and concludes that summary judgment in favor of Unisys is appropriate.

*Facts*

Unisys is a computer company that was experiencing devastating financial losses and business problems over the late 1980s and early 1990s. These conditions resulted in billion dollar losses and widespread layoffs at Unisys facilities throughout the country. Unisys had two Salt Lake operations—its commercial Distribution Center and Printed Circuit Board Facility which were both closed in response to Unisys' cost-cutting measures.

The twenty plaintiffs were laid off when the products and operations of the Salt Lake Distribution Center were transferred to a San Jose facility. Prior to the layoffs, Unisys had engaged in a variety of cost-cutting measures including: a voluntary retirement program; salary freezes, reduced employee pension benefits; suspension of company matching funds in the Unisys savings plan; limited replacement hiring; suspension of

stock dividend payments; restricted discretionary spending in areas such as travel and capital equipment purchases; sale of non-core assets; and reduced and/or suspended employee relocation assistance. The extent of Unisys' losses necessitated further cost-cutting measures in the form of world-wide layoffs affecting over 15,000 employees since the beginning of 1989 and continuing through 1990 and 1991. Since 1987, Unisys has reduced its world-wide force from approximately 100,000 to 55,000.

The Salt Lake operation was reduced from a total work force in 1987 of 1,376 to 716 employees by the end of 1992—a decline of 48%. In 1990, as part of the cost-cutting measures, a decision was made to consolidate the remaining work of the Salt Lake Distribution Center with the Unisys facility in San Jose, California. Plaintiffs and over 42 other employees were laid off in connection with this change. The average age of the employees prior to the layoff was 42.6 and subsequent to the layoff the average age increased to about 43. The ages of the affected employees ranged from 24 to 59.

Plaintiffs have sued Unisys for breach of employment contracts and age discrimination under the Age Discrimination in Employment Act (ADEA). Defendants have filed this motion for summary judgment on all claims.

*Summary Judgment Standard*

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must inform the court of the basis for his motion and identify those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue

for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The central inquiry is "whether evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.*, 477 U.S. 242, 106 S.Ct. 2505.

*Breach of Contract*

 Under Utah law there is no presumption of an employment contract, rather a person is presumed to be employed at will and therefore terminable for any reason and without cause or notice. *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992); *Johnson v. Morton Thiokol*, 818 P.2d 997, 1001 (Utah 1991); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044–46 (Utah 1989). Plaintiff may rebut this presumption by showing the existence of an express or implied contract.

Each of the plaintiffs alleges that Unisys has breached a contract of employment with them. There are numerous statements in Unisys' employee handbooks expressly disclaiming the creation of an employment contract. The plaintiffs have each acknowledged

receiving such statements in memos and in handbooks. It is undisputed that none of the plaintiffs has an express contract of employment with Unisys.

In order for plaintiffs' contract claim to survive, plaintiffs must prove the existence of an implied employment contract. In order to prove the existence of such a contract, plaintiffs must satisfy the following standard:

> [F]or an implied-in-fact contract to exist, it must meet the requirements for an offer for a unilateral contract. There must be a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision.... Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Johnson*, 818 P.2d at 1002.

■ Plaintiffs attempt to base their contract claims on their subjective beliefs that they would be employed so long as their work performance was adequate. Plaintiffs point to deposition testimony of Unisys management who testified that Unisys has had a practice of retaining employees so long as their performance was adequate. An employer's efforts to treat employees fairly and terminate only for cause—despite express disclaimers of any employment contract—is indicative of an employer's good will. It does not, as plaintiff argues, create an implied contract that employees will only be terminated when performance is deemed inadequate. Moreover, financial devastation of a company constitutes just cause for termination. *See, e.g., Malmstrom v. Kaiser Aluminum and Chem. Corp.*, 187 Cal.App.3d 299, 231 Cal.Rptr. 820, 832 (1986); *Linn v. Beneficial Commercial Corp.*, 226 N.J.Super. 74, 543 A.2d 954, 957 (Ct.App.Div.1988).

■ Plaintiffs allege that prior to their layoffs, all layoff decisions were based primarily on seniority. In approximately 1988 Unisys determined that the competitive nature of the industry required a change in policy. Unisys determined that layoffs would no longer be seniority based, but would be primarily skills based. Plaintiffs complain that they were not notified of this change in policy.[1] However, the employee handbook unequivocally stated:

> The policies and procedures in this manual supersede any and all prior policies and procedures of the Company, oral or written. They are subject to change, in whole or in part, at any time by Unisys and at its sole discretion.

Defendant's Statement of Facts, ¶ 247. Plaintiffs argue that because Unisys followed a seniority based layoff procedure prior to the policy change and allegedly subsequent thereto, that Unisys created an implied contract that any layoff would follow such policy. However, the policies and procedures of Unisys must be evaluated in light of the above express disclaimer. *See Hodgson*, 844 P.2d at 334.

In light of Unisys' express reservation of the right to change any or all policies at any time and the fact that Unisys expressly informed plaintiffs and all other employees that Unisys policies or procedures did not rise to the level of a contract, the Court cannot conclude that Unisys' alleged failure to steadfastly adhere to its 1988 policy governing layoff procedures created an implied contract. If a company could be contractually bound by past policies and procedures in the face of an at will disclaimer, then the effect of such a disclaimer in any employment situation would be eviscerated. Accordingly, the Court concludes that Unisys did not have a contract of employment, either express or implied, with the plaintiffs.

*Age discrimination claims*

■ Plaintiffs have also sued Unisys for violation of the Age Discrimination in Employment Act (ADEA). In order to prevail

---

1. Defendant states that the policy was available on the MAPPER system (computer system on which policy, operations, etc. were available to those with access to the system). Defendant Unisys also states that plaintiffs had access to this system. Plaintiffs deny that they had access in their affidavits. However, in their depositions, several of the same plaintiffs admit not only that they had access to the MAPPER system, but that they periodically reviewed the information available therein.

on an age discrimination claim, the plaintiff bears the burden of establishing a prima facie case by: (1) demonstrating that plaintiffs were within the protected age group; (2) showing that they were adversely affected by the defendant's employment decision; and (3) that they were qualified for the position at issue; and (4) by producing "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Branson v. Price River Coal Co.,* 853 F.2d 768, 771–772 (10th Cir.1988).

■ Plaintiffs must show that age was not merely a neutral factor, but that age was the *basis* for the employer's decision to layoff, not rehire or not relocate plaintiffs. Once plaintiffs' burden is satisfied, the defendant has the opportunity to rebut the presumption of intentional discrimination by demonstrating that there was a nondiscriminatory reason for the employment decision. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978). This is merely a burden of production as defendant need only articulate a nondiscriminatory reason for the decision adversely affecting plaintiffs. *St. Mary's Honor Center, et al. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden of persuasion remains with plaintiffs who must then demonstrate that the articulated reason is pretextual. "A pretext, in employment law, is a reason that the employer offers for the action claimed to be discriminatory and that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for [its] action." *Visser v. Procter Engineering Assoc., Inc.,* 924 F.2d 655, 657 (7th Cir.1991).

■ The first three factors of the prima facie case are established by the facts of this case. In an effort to satisfy the final element, plaintiffs contend that Unisys' failure to allow bumping or transfers constitutes evidence of intentional age discrimination. Plaintiffs contend that they were qualified to fill positions which were not eliminated by the layoff and positions requiring transfer to San Jose. However, local jobs which were not eliminated by the layoff were already filled by current Unisys employees. The Court has already concluded that Unisys did not have a contractual responsibility to allow plaintiffs to bump lower level employees. Moreover, many of the employees whom plaintiffs allege they should have been allowed to bump are themselves within the protected age class.

Plaintiffs also allege that they were denied transfers to San Jose because of their age. The undisputed evidence before the Court, however, is that seventy-five percent (75%) of the employees transferred to San Jose were within the protected age class. One of the oldest plaintiffs, Roger Englert, was offered the job as manager of the San Jose Distribution Center, but declined the offer.

Furthermore, Plaintiff Englert, former head of the Distribution Center, testified that he did not make any layoff decisions based on age, was aware Unisys policy prohibited the use of age as a factor, and that he was told to follow Unisys' antidiscrimination policy during the reduction in force. Englert Depo. at p. 452, line 15 to p. 453, line 4.

Essentially, the only evidence plaintiffs offer in support of alleged discriminatory intent is the fact that Unisys utilized a new policy in connection with the reduction in force. Rather than the historical policy based primarily on seniority and permitting bumping and lateral transferring, Unisys utilized a skills-based policy. Plaintiffs have conceded that this policy is not discriminatory on its face, but was necessitated by economic and market forces which "compelled the defendant to be more innovative and responsive to change [while] the former policy allowed less capable people with more seniority to be retained instead of more capable younger employees." Cherrington Affidavit, ¶ 8(a). Accordingly, the Court concludes that the plaintiffs have failed to establish a prima facie case of age discrimination.

■ Assuming for the purposes of this memorandum decision, that plaintiffs successfully established a prima facie case, the Court will proceed to address the pretext issue. Defendant has articulated as a nondiscriminatory basis for the layoffs that Unisys was losing billions of dollars and had to implement drastic cost-cutting measures. Plaintiffs concede that Unisys was facing an

economic disaster. However, plaintiffs allege that "using age as a criterion in realizing that legitimate business goal is precluded." Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, p. 106. Plaintiffs also state that the economic problems "may be an adequate reason to declare a reduction in force, but [Unisys] does not carry the burden of establishing a legitimate, non-discriminatory reason for terminating the plaintiffs." *Id.* Plaintiffs misunderstand where the burden lies. Defendants need only *articulate* a non-discriminatory reason for the reduction in force and plaintiffs continue to bear the burden of demonstrating that the articulated reason is a pretext.

As stated above, the crux of plaintiffs' argument is that proof of discriminatory intent and pretext is found in defendant's failure to utilize the seniority based layoff approach. The Court, for reasons already stated, concludes that this change in policy proves nothing. First, seniority and age are not the same thing. The alleged failure of Unisys to base the layoffs solely on seniority is not necessarily age-related.[2] Second, Unisys had a written policy of skills-based layoffs which plaintiffs concede is age-neutral. Essentially, plaintiffs are arguing that the failure to treat older employees more favorably constitutes age discrimination. The ADEA, however, does not "place an affirmative duty upon an employer to accord special treatment to members of the protected age group." *Equal Employment Opportunity Comm'n v. Sperry Corp.*, 852 F.2d 503, 509 (10th Cir.1988), *quoting Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981). Plaintiffs offer no evidence that the skills-based layoff system utilized in light of economic catastrophe was a pretext for age discrimination.

Plaintiffs have failed to carry their burden of proof both in establishing a prima facie case and in establishing that defendant's reason for the layoffs was pretextual.

**2.** While seniority and age often appear to be related, seniority is not a relevant legal consideration in an age discrimination case:

> We are obliged to point out several misconceptions of the ADEA.... seniority and age discrimination are unrelated. The ADEA targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status.

*Conclusion*

The Court recognizes that employment decisions, such as those at issue, have a profound and adverse effect upon the lives of the individual plaintiffs. However, under the facts presented and applicable law, it would be improper for the Court to intervene in an attempt to rectify the perceived wrongdoing. Difficult business decisions had to be made by a company facing serious economic problems and, absent evidence of age discrimination or contractual agreements, the Court is without authority to act or second guess such decisions.

For the foregoing reasons the Court GRANTS defendants' motion for summary judgment and dismisses plaintiffs' claims with prejudice. The clerk of the court is directed to prepare and enter Judgment in accordance with this Memorandum Decision and Order.

This is borne out, to be sure, by the simple observation that a 35–year old employee might have more seniority than a 55–year old employee.... We state without equivocation that the seniority a given plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit.

*Williams v. General Motors Corp.*, 656 F.2d 120, 130 n. 17 (5th Cir.1981).