Roger W. KREIMEYER, et al., Plaintiffs,

v.

HERCULES, INC., a Delaware corporation, and Jon Peterson, Defendants.

No. 92–NC–088S.

United States District Court, D. Utah, Northern Division.

Sept. 27, 1994.

Fred R. Silvester, Silvester & Conroy, L.C., Salt Lake City, UT, Claudia F. Berry, J. Michael Hansen, Mark R. Gaylord, Charles P. Sampson, Suitter, Axland & Hanson, Salt Lake City, UT, William K. Nash, Richard E. Malmgren, W. Robert Wright,

**1376**

Holme Roberts & Owen, Salt Lake City, UT, Evan A. Schmutz, Hill Harrison Johnson & Schmutz, Provo, UT, Lawrence R. Dingivan, Purser Edwards & Shields, Salt Lake City, UT, for plaintiffs.

Keith E. Taylor, David A. Anderson, Michael A. Zody, W. Mark Gavre, Lois A. Baar, Parsons Behle & Latimer, Salt Lake City, UT, Brent H. Shimada, Hercules Inc. Bacchus Works, Magna, UT, John M. Crane, Jr., Brent E. Zepke, Hercules, Inc. Hercules Plaza, Wilmington, DE, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CONTRACT CLAIMS OF ALL PLAINTIFFS

SAM, District Judge.

This matter came before the court on the defendants' motion for summary judgment on all plaintiffs' claims for breach of an implied contract (Second Cause of Action). For reasons discussed more fully below, the motion is granted.

### I. Background

The plaintiffs' employment with the defendant Hercules, Inc. was terminated during a reduction in force (RIF). In their Second Cause of Action, they allege that the defendants breached a contract implied from Hercules' Management Manual that seniority would be taken into account in determining which employees would be terminated during a RIF.

The defendants argue that the Second Cause of Action should be dismissed because: (1) the plaintiffs were employed "at will"; (2) they were notified by a disclaimer in the employee handbook that their employment could be terminated "at any time"; (3) the Management Manual was not directed to salaried employees like the plaintiffs but was intended solely as a management tool; and (4) the RIF procedures in the management manual were too indefinite to create contract rights. Alternatively, the defendants argue that the claims of certain plaintiffs should be dismissed because their deposition testimonies showed that they were insufficiently aware of the RIF policies for an implied contract to be formed or were not asserting a claim for breach of an implied contract.

### II. Standards for summary judgment

Summary judgment is proper where the pleadings and other documents of record "show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party seeking summary judgment always bears the initial burden of identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, once the moving party has carried its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R.Civ.P. 56(e)). The nonmoving party may not merely rely on the pleadings but must *"make a sufficient showing to establish the existence of an element essential to that party's case,* and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552 (emphasis added).

### III. Discussion

Under Utah law, there is a presumption that "any employment contract which has no specified term of duration is an at-will relationship." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989). An at-will relationship can be terminated by either the employer or the employee at any time and "for any or no reason." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah 1991). *See also Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 976 (Utah App.1993), *aff'd*, 878 P.2d 1153 (Utah 1994). Moreover, an at-will employee has "no right of action against his employer for breach of the employment contract upon being discharged." *Brehany*, 812 P.2d at 53 (quoting *Bihlmaier v. Carson*, 603 P.2d 790, 792 (Utah 1979)).

A discharged employee may rebut the at-will presumption by showing that "the

parties expressly or impliedly intended a specified term [of employment] or agreed to terminate the relationship for cause alone." *Berube*, 771 P.2d at 1044. Evidence of this intent can take the form of "employment manuals, oral agreements, and all circumstances of the relationship." *Id.*

■ Although the existence of an implied-in-fact contract is generally a question of fact, the court may decide the issue as a matter of law if the evidence is such that "no reasonable jury could conclude that the parties agreed to limit the employer's right to terminate the employee." *Id.; James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 998 (10th Cir.1994) (applying Utah law). The court can also construe the terms of an employee manual as a matter of law unless the terms are ambiguous. *Brehany*, 812 P.2d at 56.

■ The burden of establishing the existence of any implied-in-fact contract provision is on the employee. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991). "[F]or an implied in fact contract term to exist, it must meet the requirements for an offer of a unilateral contract." *Id.* at 1002. In other words, the employee must show "a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision." *Id.* The manifestation of the employer's intent must also be "of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will." *Id.*

■ Of course, an implied-in-fact promise cannot contradict a written contract term. *Berube*, 771 P.2d 1033, 1044 (Utah 1989). If the employer has expressed an intent to preserve the at-will relationship with its employees by a "clear and conspicuous" disclaimer in an employee handbook, any other evidence must be construed in light of the disclaimer. *Johnson*, 818 P.2d at 1000; *Kirberg v. West One Bank*, 872 P.2d 39, 41 (Utah App.1994). Indeed, such a disclaimer "effectively preserves the at-will employment." *James*, 21 F.3d at 998 (citing *Johnson*, 818 P.2d at 1003).

In *Johnson*, the employer had published and distributed an employee handbook which outlined certain termination procedures. However, the introduction to the handbook contained the following disclaimer:

> Your employment is for no set period and may be terminated without notice and at will at any time by you or the company.

818 P.2d at 1003 (emphasis added). The Utah Supreme Court affirmed the trial court's grant of summary judgment for the employer on the employee's claim for breach of an implied contract. The Court explained:

> Given this language, the only reasonable conclusion an employee or a juror could reach ... is that [the employer] intended to retain the right to discharge for any reason.... [T]he most [the employee] is entitled to is the right to challenge his termination under the handbook's procedures, not the right to be fired only for good cause....
>
> Therefore, at the time the handbook was first distributed to [the employee], his employment was at will. While it is true that subsequent expressed or implied agreements could have modified the at-will employment relationship, in the instant case the remaining allegations are insufficient to raise a triable issue concerning a subsequent modification.

*Id.* at 1003–04.

The record in this case shows that in January 1987, Hercules distributed an "Employe[e] Handbook" to all salaried employees at its Utah plants. (Affidavit of Elwood Swanson, ¶ 3.) The introduction to the handbook contains the following disclaimer:

> Remember that as a salaried employe[e] you have the *right to terminate employment at any time*, and also be aware that the Company retains a similar right.

(Ex. 1 to Memorandum in Support of Motion for Summary Judgment at 2; emphasis added).

The handbook also refers to a "Management Manual":

> The Management Manual is the basis from which all other procedures to perform individual and specialized tasks are written. The Management Manual is a management tool by which Plant Management conveys to the Bacchus Organization its delegation of departmental responsibilities through policies, procedures, and organization....

Refer to the Management Manual for any questions you may have pertaining to Hercules policies and procedures.

*Id.* at A–5. The Management Manual is a four-volume document which was never distributed to Hercules employees generally but was kept by management employees for their reference. (Affidavit of Elwood Swanson, ¶ 8.) Nevertheless, any employee could see the manual upon request to management. *Id.*

The plaintiffs' implied contract claim is based on Management Manual Procedure No. 2–6.1, which provides in part:

This procedure establishes guidelines for a reduction in force situation for salaried employees.

.    .    .    .    .

DIV. DIR./DEPT.MGR. ...

Evaluates employee(s) with awareness of the department's Affirmative Action Plan status, *company service,* performance, and the current or anticipated need for an employee's expertise.

... When performance in present job is comparable, *company service* will be used as the determining factor in selecting the individual to be RIF'd or moved to a lower grade.

(Subparts A, F.4 & F.5.a, Ex. 2 to Memorandum in Support of Motion for Summary Judgment; emphasis added).

■ The court agrees that Hercules' disclaimer in the introduction of its handbook is "clear and conspicuous." When Management Manual Procedure No. 2–6.1 is construed in view of that disclaimer, it is clear that the procedure does not create any right to be fired only for good cause. The disclaimer "effectively preserve[d] the at-will employment." *James,* 21 F.3d at 998.

At the time the handbook was distributed, Hercules' salaried employees were employed at will. Moreover, Management Manual Procedure No. 2–6.1 is insufficient to modify the parties' at-will agreement for several reasons. First, it was not distributed to salaried employees generally. *See Owens v. American Nat'l Red Cross,* 673 F.Supp. 1156, 1165 (D.Conn.1987) ("The Supervisor's Manual cannot form the basis for an enforceable contract because it was not generally provided to employees or intended for circulation.")

Second, the procedure merely lists length of "company service" as one of various factors for the division director or department manager to consider; length of service is "the determining factor" only when the employee's performance in his present job is comparable to the performance of another employee with less company service. Procedure No. 2–6.1, Subparts F.4 & F.5.a. *See Stewart v. Chevron Chem. Co.,* 111 Wash.2d 609, 762 P.2d 1143, 1146 (1988) (RIF policy that only required the employer to consider the employee's length of service, performance, and experience, was too indefinite to create a binding offer).

In any event, the procedure is just a "guideline" (by its own terms) or "management tool" (as described in the Employe[e] Handbook). (Ex. 2, Subpart A, and Ex. 1 to Memorandum in Support of Motion at A–5.) The plaintiffs could not reasonably consider it an offer to modify the parties' at-will relationship. *See Wojcik v. Commonwealth Mortgage Corp.,* 732 F.Supp. 940, 943 (N.D.Ill.1990) (employee would be unreasonable to consider a provision whose stated purpose was to "provide management with termination guidelines" as an offer by the employer to modify the parties' at-will agreement); *Knights v. Hewlett Packard,* 230 Cal. App.3d 775, 281 Cal.Rptr. 295, 298 (1991) (personnel policies which were intended as "a guide for supervisors involved with an employment termination" were too discretionary to form the basis for an implied contract, even though the policies used some mandatory terms).

■ The plaintiffs submit that, in the past, Hercules has used years of service as a determinative factor in considering who should be RIF'd. (Deposition of Robert Stephens at 137–144, Ex. C to Plaintiffs' Memorandum in Opposition.) While the conduct of an employer may be relevant to show its intent to modify the parties' agreement, that conduct must also meet the standards of a unilateral offer and acceptance:

The employer must communicate the intent to offer employment other than at will, the communication must be sufficiently definite to act as a contract provision, and the communicated intent must be such

that the employee may reasonably believe that the employment offered is other than at-will.

*Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331, 334 (Utah 1992).

Evidence that Hercules followed Procedure No. 2–6.1 during prior RIF's, does not meet this standard and is likewise insufficient to raise a triable issue. As this court recently explained in *Jones v. Unisys Corp.,* 829 F.Supp. 1281 (D.Utah 1993):

> If a company could be contractually bound by past policies and procedures in the face of an at will disclaimer, then the effect of such a disclaimer in any employment situation would be eviscerated.

*Id.* at 1284.

### IV. Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment on the Second Cause of Action is granted as to all plaintiffs.