54 N.J. Super. 333 (1959)
148 A.2d 872
WILLIAM J. PIECHOWSKI, PLAINTIFF-APPELLANT,
v.
FRANK R. MATARESE, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1958.
Decided March 2, 1959.
*337 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Martin L. Haines argued the cause for appellant (Messrs. Dimon, Haines & Bunting, attorneys).
Mr. Burton Peskin argued the cause for respondents (Mr. Alexander Denbo, attorney).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff appeals from a final judgment of dismissal entered by the trial court on defendants' motion at the close of plaintiff's case. He urges the following grounds entitling him to a new trial: (1) the evidence established a prima facie case entitling him to have the matter passed upon by the jury; (2) error in the exclusion of evidence concerning his personal habits and background; (3) error in denying his motion for a new trial.
On June 24, 1957 plaintiff commenced the instant action against Frank R. Matarese, Joseph F. Matarese, James Matarese, Jr., John Scanlon, and Bestby Products Corporation (Bestby), jointly, severally and in the alternative. The complaint was in five counts. In counts four and five plaintiff sought a judgment in the sum of $2,500 against Bestby alone on alternative counts for a money loan. It was stipulated that he should have judgment on those counts.
The matter was tried upon the first three counts. The theory and allegations of each may be synopsized as follows: (1) breach of contract arising from defendants' failure to deliver 40% of the common stock and 50% of the voting *338 rights of Bestby and their refusal to pay him $325 per week subsequent to July 10, 1955; (2) fraud in that defendants knowingly misrepresented the financial condition of Bestby during the negotiations which culminated in an agreement dated February 5, 1955, and represented that plaintiff would be paid $325 per week for an indefinite time, when in fact they had no intention to pay him such a sum for an indefinite period; (3) breach of trust arising from the manner in which defendants, as officers and directors of Bestby, conducted the corporate business. Plaintiff sought a money judgment in the sum of $100,000, an accounting, and costs of suit.
The certificate of incorporation of Bestby Products Corporation (Bestby) was filed in the office of the Secretary of State of New Jersey on March 30, 1954 and was recorded in the office of the Clerk of Burlington County on March 31, 1954. Bestby was thereby authorized to issue 100 shares of no-par common stock. The shares authorized to be issued were to be divided into three classes, the number of shares to be apportioned among the classes as follows: Class A  54 shares; Class B  34 shares; Class C  12 shares. The stock of classes A and B was denominated the voting stock. The subscribers to Bestby stock, the classes of stock subscribed and the number of shares subscribed by each are found from the certificate of incorporation to be the following:

 James Matarese, Sr. ........ 9 shares Class A stock
 Abrogio Matarese ........... 18 shares Class A stock
 Joseph F. Matarese ......... 9 shares Class A stock
 Isadore Matarese ........... 9 shares Class A stock
 James Matarese, Jr. ........ 9 shares Class A stock

Bestby was incorporated for the purpose of acquiring the assets of a New York corporation, MBP, then engaged in the business of manufacturing children's furniture. Bestby accomplished this purpose and thereafter set up and operated a manufacturing plant in Burlington County, at which it conducted the business of manufacturing and selling children's *339 furniture under the direction of the individual defendants.
After about one year's operation, Bestby was in need of additional working capital. Frank Matarese, treasurer of Bestby, approached plaintiff, seeking to sell him an interest in Bestby. During subsequent negotiations between plaintiff and the Matareses, plaintiff was counselled by both his lawyer and his accountant. The Matareses furnished plaintiff with balance sheets of Bestby. There is no proof that the balance sheets were false or that the financial condition of Bestby was misrepresented. Plaintiff submitted that data to both his lawyer and his accountant and relied upon their advice in concluding that he would accept the offer which the Matareses had made to him. As a result, the parties entered into the following agreement:
 "State of New Jersey |
 > ss.
 County of Burlington |
This Agreement drawn this 5th day of February, 1955, by and between the principle stockholders and officers of the Bestby Products Corporation, a corporation organized under the laws of the State of New Jersey, and engaged in the manufacture and sale of juvenile furniture and Mr. William J. Piechowski of 310 Elm Avenue, Burlington, New Jersey, for the purpose of selling to Mr. William J. Piechowski an interest of 40 percent in the aforementioned corporation for the sum of $40,000.00 (Forty Thousand dollars), do hereby agree to the following:
1. William J. Piechowski shall own 40 percent of the stock of the Bestby Products Corporation.
2. William J. Piechowski shall have 50 percent voting rights.
3. William J. Piechowski shall receive a salary of $325.00 per week.
4. In the event of the demise of Mr. Piechowski, his rights and shares in the Bestby Products Corporation shall be passed on in full to his wife. In the further event of the demise of Mrs. Piechowski, wife of Mr. William J. Piechowski, either at a later date, or simultaneously with the demise of Mr. Piechowski, the stock shall revert back in full to the Bestby Products Corporation after the said Corporation has paid in full the book value of the stock at such time to the Piechowski estate.
5. This stock as held by Mr. and Mrs. Piechowski shall not be sold, assigned, or transferred without first offering the said stock to the principles of the Bestby Products Corporation hereinunder signing this agreement, first.
*340 It is further understood and agreed that the present duties of the undersigned officers and stockholders of the Bestby Products Corporation shall remain in the same.
Agreed and signed to this 5th day of February, 1955.
 For Bestby Products Corp.:
 Officers and Stockholders
 James Matarese, Jr. /s/
 Pres.
 Frank R. Matarese /s/
 Treas.
 Joseph Matarese /s/
 Sec.
 John Scanlon /s/
 V.P.
 Isadore Matarese /s/
 Stockholder
 For interested party:
 Mr. J. Piechowski /s/
 Witnesses: (Illegible)
 Jack Lawrence /s/"
James Matarese, Sr. was not named a party defendant. John Scanlon was not served.
Plaintiff paid $40,000 in installments, as follows:

 February 8, 1955 ........................ $20,000
 February 17, 1955 ....................... 10,000
 March 2, 1955 ........................... 8,000
 March 14, 1955 .......................... 2,000

The $40,000 was deposited to the account of Bestby and used for its purposes. Plaintiff was appointed a vice-president of Bestby. He received a salary from Bestby of $325 per week from February 5, 1955 to July 14, 1955, although the nature and duties of his employment were tenuous and indefinite. Thereafter he requested regular employment and through Frank Matarese was hired by Bestby to work in the plant at a salary of $48 or $50 per week. The defendants Matarese devoted full time to business but received no salary.
The minutes of Bestby were kept most informally. No stock was ever issued to plaintiff, defendants, or to any other *341 person. (Although John Scanlon is designated a "V.P." in the agreement, it does not appear how or when he became a stockholder. As noted, he does not appear in this action because service of process could not be effected upon him in New Jersey). However, plaintiff was given notice of all corporate meetings, attended a number, and Bestby functioned as a corporate entity, in the business of manufacturing children's furniture. No dividends were declared by Bestby.
The business venture did not realize the optimistic hopes of the parties but, to the contrary, sustained a steady and increasing loss.
It is axiomatic that a motion for judgment at the end of plaintiff's case admits the truth of plaintiff's evidence and every inference of fact which can be legitimately drawn therefrom which is favorable to plaintiff, and denies only its sufficiency in law. On such a motion the trial court cannot weigh the evidence. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
It should be noted that plaintiff's demand for judgment was for damages, an accounting and costs. He did not seek equitable rescission.

I.
The agreement upon which suit is here brought is ineptly and inartistically worded. Paragraphs numbered 1 and 2 are susceptible to a number of constructions. It could be concluded from these paragraphs and from the manner in which the agreement was signed that it was intended that the agreement should be binding upon (1) the individual signatories; (2) the corporate entity, or (3) both such individuals and the corporate entity. It could as well be concluded that plaintiff was to receive (1) 40% of the stock issued and outstanding and a 50% voting right; (2) 40% of each class of authorized capital stock and a 50% voting right, or (3) 40% of the voting stock then issued and outstanding, or 40% of the authorized voting stock, or a combination *342 of both, which would result in vesting him with 50% of the voting stock of the corporate entity. It is not necessary for the purpose of this opinion to construe the agreement in order to ascertain what the true intent of the parties was, since under any construction plaintiff has no ground for recovery.
Were the provision for the vesting of a voting interest in plaintiff construed to be in excess of his proportionate stockholding such a provision would be in violation of the statutes of this State and hence void. In Nickolopoulos v. Sarantis, 102 N.J. Eq. 585, 587 (E. & A. 1928), the court said:
"The stockholders are powerless, except by the method provided, to alter the voting power of any share of stock. In the present case the agreement did not appear in either the certificate of incorporation or in the by-laws. Hence, when the parties to the present suit attempted to clothe the complainant, holder of but 25 per cent. of the capital stock, with a voting strength of 50 per cent., it was in violation of the act, and created a control of the corporation at variance with that indicated by the charter, by-laws, and stock list. This was a fraud on the corporation and on those dealing with it. The stockholders, as also the public, are entitled to know from a corporation's official records who are in control of its management. If the present method of secret agreement were sanctioned, serious abuse and misuse of corporate power would speedily result. Instead of 25 per cent. of the stock, any smaller proportion might be selected and a chosen individual (a favored creditor perhaps) given despotic authority, of which authority stockholders not parties to the agreement and others dealing with the corporation would be in complete ignorance."
Cf. Katcher v. Ohsman, 26 N.J. Super. 28, 37 (Ch. Div. 1953).
Such a contractual provision, being illegal, would be unenforceable and hence there could be no recovery for a breach thereof. Our courts will not assist either party to enforce or undo an illegal transaction. Lizak v. Rottenbucher, 140 N.J. Eq. 76 (Ch. Div. 1947); Greene v. Birkmeyer, 8 N.J. Super. 217 (App. Div. 1950).
Regardless of the illegality, if it be concluded that the contract is in the nature of a subscription for capital *343 stock, and thus binding between Bestby in its corporate capacity and plaintiff, then it would not be necessary that a stock certificate actually issue in order to confer upon plaintiff the rights and privileges of a stockholder, the certificate being merely the evidence or muniment of title, and not the property itself. Warren v. New Jersey Zinc Co., 116 N.J. Eq. 315 (Ch. 1934); American Pig Iron Storage Co. v. State Bd. of Assessors, 56 N.J.L. 389 (Sup. Ct. 1894).
If it be concluded that the contract is between plaintiff and the individually named stockholders it is not necessary that a stock certificate actually issue to plaintiff in order to vest him with a stockholder's rights and privileges, since he was vested, under the contract, with an equitable interest commensurate with the requirements thereof. In Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408, 413 (E. & A. 1943), the court said:
"Equity regards and treats as done what in good conscience ought to be done. Under this cardinal equitable principle, there being no contrary intent, executory contracts for the sale of lands or chattels, while considered as executory for some purposes in equity as well as at law, are from the outset regarded in equity as executed so far as concerns the interest or estate in the subject matter and as operating to transfer that interest to the vendee. An equitable estate or interest commensurate with the requirements of the contract of sale is vested in the vendee. Although the vendor still has the legal title, he holds it in trust for the vendee. The beneficial interest is in the vendee. This is so as to the parties to the contract and, as well, all who take with notice of the vendee's equitable rights."
In addition, it is to be remembered that although the corporation never formally issued any stock, plaintiff and defendants recognized each other as stockholders. They apportioned offices and held stockholders' and directors' meetings. Plaintiff was and still is a vice-president of Bestby. On June 8, 1955 plaintiff addressed a letter to the stockholders of Bestby in which he said, in part: "Consider this letter as authority to dispose of my interest in Bestby Products Corp., 40 shares of capital stock and 50% voting rights, under terms and arrangements accepted by the Matarese group." As far as appears from the *344 record, no stock certificates were ever issued to any of the parties. It is plain, therefore, that whether or not stock certificates were ever actually issued and delivered to plaintiff, he considered himself a stockholder and was recognized by the other stockholders of Bestby as such.
The failure to deliver the stock to plaintiff as required by the contract, although a technical breach, caused him no monetary loss nor will it provide him a ground for the relief sought. Thus it is immaterial on the question of the failure to deliver a stock certificate to plaintiff whether the agreement be considered an agreement of Bestby in its corporate capacity, or the named defendants in their individual capacities, or a combination of both, since in any event plaintiff was not damaged by such failure.
In the absence of a contract or statute, an employment, unless otherwise specified, is generally at will and subject to termination with or without cause. Schlenk v. Lehigh Valley Railroad Co., 1 N.J. 131 (1948); Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541 (1958). As to quantum of proof required to establish a contractual employment for such a term, the court said, in Savarese v. Pyrene Manufacturing Co., 9 N.J. 595, 601 (1952):
"Agreements of this nature have not been upheld except where it most convincingly appears it was the intent of the parties to enter into such long-range commitments and they must be clearly, specifically and definitely expressed. Only then is it grudgingly conceded that not all such contracts are `so vague and indefinite as to time as to be void and unenforceable because of uncertainty or indefiniteness.' 56 C.J.S. Master and Servant § 6, p. 70; 1 Williston on Contracts, sec. 39, p. 110; 135 A.L.R. 646 et seq."
One of the devices created by the courts to test whether or not the parties specifically and definitely intended to make a permanent or lifetime contract of employment is whether the employee gave some consideration additional to the mere agreement on his part to render service. Even though such additional consideration appears to have been given, a contract for permanent or lifetime employment, like all other contracts, must fulfill the requirements of *345 definiteness and certainty in all of its terms to be enforceable. That intent must be clearly, specifically and definitely expressed. Eilen v. Tappin's, Inc., 16 N.J. Super. 53 (Law Div. 1951); Savarese v. Pyrene Manufacturing Co., 9 N.J. 595, 601 (1952); 135 A.L.R. 678. Although consideration additional to the proposed rendering of future service moved from the plaintiff, the contract failed to express clearly, specifically and definitely an intention other than that the employment should be at will. The failure to pay plaintiff the $325 per week salary after July 14, 1955 did not constitute a breach of the contract, inasmuch as the agreement called for an employment at will.
Plaintiff does not urge that he sustained the burden of proving actual misrepresentation. Nor can it be seen how he could successfully argue that there was fraud in the inception of the contract in the light of both the failure to prove that any oral or written statements concerning the financial status of Bestby were untrue, and of plaintiff's admission that he did not rely upon such statements but relied rather upon the independent examination and advice of his counsel and accountant.
As to plaintiff's allegation of fraud consisting of an intention existing at the time of the execution of the contract not to comply with the terms thereof, it must be remembered that normally such a representation, if it is to form a basis of an action for deceit, must relate to some past or presently existing fact and cannot be predicated upon representations involving matters in futuro. Comfort Spring Corp. v. Brooks Equipment Corp., 13 N.J. Super. 564, 566 (App. Div. 1951); Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157 (App. Div. 1953).
A false representation of an existing intention, however, is actionable. Comfort Spring Corp. v. Brooks Equipment Corp., supra; Landriani v. Lake Mohawk Country Club, supra.
In every action for deceit the plaintiff must aver and prove that the alleged fraud was the cause of damage. Failure to prove damage warrants the granting of a judgment *346 of dismissal at the end of plaintiff's case. Landriani v. Lake Mohawk Country Club, supra.
Conceding, merely for the purposes of this argument, that plaintiff proved some breach of the contract, he failed, in any event, to prove that defendants had an intention at the time of the execution thereof not to comply with the terms. Plaintiff additionally failed, as above noted, to establish any damages resulting from an alleged breach for which recovery could be had. Plaintiff failed to prove that defendants breached any fiduciary duty owed to him.

II.
Plaintiff also argues that the trial court erred in refusing to admit evidence which concerned his habits and background.
Plaintiff sought to adduce testimony which he alleged would lead to the conclusion that he was addicted to heavy drinking and that he had a limited formal education. Plaintiff's counsel stated that the testimony concerning plaintiff's educational background and drinking habits was not for the purpose of demonstrating either that he did not have the general mental capacity to understand the nature of the contract which he was signing or that on the date upon which said contract was signed he was under the influence of alcohol to such an extent as to not understand the nature of the contract. The avowed purpose of this testimony was to sustain the charge that defendants were guilty of fraud. In connection with plaintiff's proffer to prove his educational background and alleged chronic alcoholism, plaintiff's counsel admitted that he could not prove that defendants had any knowledge thereof, nor did he offer to prove that plaintiff's alleged condition was such that it was a matter of common knowledge. In the circumstances of this case, plaintiff's habits and background had no relationship to the issues and any questions relating thereto are tainted with the vice of immateriality and irrelevency. In any event, since defendants had no knowledge of either *347 circumstance, that evidence is inadmissible on the issue of their alleged fraud. The trial court did not err in excluding such evidence.

III.
What has been said above is equally applicable to our conclusion that there was no error in the denial of plaintiff's motion for a new trial.
Affirmed.