**Elisa Wong MONROE, Plaintiff,**

v.

**HOST MARRIOT SERVICES CORP., Tom O'Hare, and Ruth Crowley–Jacinto, Defendants.**

No. Civ.A. 97–2529(JEI).

United States District Court, D. New Jersey.

April 7, 1998.

Sebastian M. Rainone & Associates by Sebastian M. Rainone, Philadelphia, PA, for Plaintiff.

Chadbourne & Parke LLP by James C. LaForge, Kathy D. Bailey, Franklin Lakes, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

This matter appears before the Court on the motion of defendants Host Marriott Services Corporation ("Host Marriott"), Tom O'Hare ("O'Hare") and Ruth Crowley–Jacinto ("Crowley–Jacinto") for summary judgment on plaintiff Elisa Wong Monroe's ("Monroe") complaint alleging defamation, breach of contract, and wrongful termination. For the reasons that follow, we will grant summary judgment to defendants on each of plaintiff's claims.

## I. BACKGROUND

On September 26, 1994, Monroe started her employment with Host Marriott as a Merchandise Manager in the Atlantic City branch. She remained with Host Marriott, receiving mostly favorable reviews, until November 1, 1996, at which time she was terminated. Host Marriott contends that Monroe was terminated because her position was eliminated as a result of a business decision to reduce staff in the Atlantic City branch. Monroe, on the other hand, claims she was terminated in retaliation for her invocation of grievance procedures seeking vindication for an alleged defamatory memorandum.

The events giving rise to this lawsuit began on January 5, 1996, when Monroe's supervisor, Jerry Thompson ("Thompson") read a memorandum dated January 4, 1996 (the "Memo") from Thompson's superior, defendant O'Hare, aloud to the assembled Host Marriott management staff in Atlantic City. Thompson read the Memo to the group in order to prepare a requested response to O'Hare. The Memo criticized several aspects of the Atlantic City's branch's performance, including three specific references to the Merchandise Manager, Monroe's position. O'Hare prepared the Memo with assistance from defendant Ruth Crowley–Jacinto ("Crowley–Jacinto"). O'Hare is the Executive Vice President in charge of operations, and is based at the Host Marriott headquarters in Bethesda, Maryland. Crowley–Jacinto is a Vice–President for Retail at the Host Marriott headquarters in Bethesda. She serves as a consultant to O'Hare and Thompson on retail matters.

Plaintiff claims that the Memo contained defamatory statements about her. The allegations which plaintiff claims are defamatory of her are:

Item 1: "Eye off the ball during summer cost us sales and profits. . . ."

Item 7: "Branch has not conducted retail certification training. If they had, associates and managers would have been better prepared for business and better equipped to mange it."

Item 8: "Branch is not adequately positioned for summer business including:— product mix geared to older clientele vs. collegiate groups."

Item 9: "Product mix in branch does not meet customer profile. . . . insufficient value promotions for customer, excess p.o.p. markdowns thus making purchasing more difficult for clientele. . . ."

Item 10: "Lack of follow through at merchandise manager level including:

—putting training received at last three meetings to work in the business and sharing that new knowledge with managers and associates

—lack of responsiveness to ideas, programs, etc.

—reaction too slow to business trends/seasonal needs e.g. gift sales off as much as 100% in some stores but timely action not taken, shirts from last spring are still shown but designs should have turned over 2–3 times since

—markdowns not taken especially in toys, gifts and seasonal products (POS markdowns over-used)

—lack of value pricing which better responds to customer mix (in spite of repeated offers and calls initiated by To a Tee, HRLA, etc. who could have provided same to drive sales and offer new "looks" to the repeat visitors)

—shifts in mix/cop by category and by store need closer attention and follow through

—visual standards needs higher standard in application/implementation (as per manual)"

Item 11: "Merchandise Manager is not held accountable to the same level as other areas in the business (or to the same level as previous merchandise managers)"

Item 12: "The perception is that merchandise manager and HR manager are 'favored' and are held to a different level of accountability which is cause for tension and hurts morale and potential value of open feedback"

Item 14: " 'Team' walk through of stores (e.g., weekly) with real orientation and follow through would impact business, develop people and better meet customer and landlord expectations."

Exh. A to Pl. Compl. In plaintiff's internal complaint to Host Marriott, plaintiff only claimed that two of the statements in the Memo, items 7 and 10, were untrue. Bailey Aff. at Exh. 8.

Plaintiff claims that after the reading of the memo on January 5, 1996, the defamatory statements were repeated "at least until the end of August 1996." Compl. at 23, 36. She notes one specific instance of repetition when she herself faxed a copy of the Memo to an internal auditor of Host Marriott. She also claims unspecified employees may have expressed their sympathy about the Memo statements after May 1996.

Sometime in January, after the publication of the Memo at the January 5, 1996 meeting, Monroe invoked the grievance procedures outlined in Host Marriott's Guarantee of Fair Treatment ("GFT"). The GFT is a one-page policy statement which Monroe and other employees are given when they begin their employment with Host Marriott. Monroe received her copy of the GFT on September 27, 1994, her second day of work. She and her supervisor signed and dated the document to acknowledge receipt. The GFT, in its entirety, provides:

Host Marriott Corporation policy provides that every employee, regardless of position, be treated with respect and in a Fair and just manner at all times. In keeping with this long recognized policy, all persons will be considered for employment promotion or training on the basis of qualification without regard to race, color, creed, sex or national origin.

We recognize that, being human, mistakes may be made in spite of our best efforts. We want to correct such mistakes as soon as they happen. The only way we can do this is to know of your concerns and complaints. NO MEMBER OF MANAGEMENT IS TOO BUSY TO HEAR CONCERNS OR COMPLAINTS OF ANY EMPLOYEE.

If you have a concern or complaint, this is what you should do.

Step 1—Tell your immediate supervisor. During this discussion feel free to "lay your cards on the table." Your supervisor will listen in a friendly, courteous manner because it is the supervisor's desire to understand and aid in solving problems which arise in your work. Generally, you and your supervisor will be able to resolve your concern.

Step 2—If you do not get your concerns straightened out with your supervisor, see your Manager or Department Head. The Manager or Department Head will obtain all the facts and endeavor to settle your problem in a fair and equitable manner, if you [sic] still not satisfied, the Manager or Department Head will arrange for you to see your District Manager or General Manager.

Step 3—Your district Manager or General manager will confer with you, and all others involved, to carefully review the facts and circumstances if, after a thorough discussion of the matter, you still feel the concern has not been resolved to your

satisfaction, the entire matter will be referred to your Divisional Vice President for action.

NOTE: Your concern may be such that you prefer to discuss it directly with your District Manager or General Manager or a representative of the employee relations staff. Always feel free to do so. It is the policy of Marriott Corporation that all employee suggestions and complaints shall be given full consideration. There will be no discrimination or recrimination against any employee because the employee presents a complaint or problem.

Exh. B to Pl. Compl.

Monroe brought her claim to the area Human Resources administrator who then referred her to the General Manager. After discussing Monroe's claims with her, the General Manager requested that the Director of Field Human Resources, Bob Mascio ("Mascio"), meet with Monroe. Mascio met with Monroe, as well as other management employees of the Atlantic City branch. Mascio testified in his deposition that he repeatedly advised Monroe to send her rebuttal to the Memo directly to Crowley–Jacinto. Mascio Dep. at 33. Monroe did not follow this advice. Mascio further testified that he sought to allay Monroe's concerns:

> I tried to stress to her that I didn't view this as a reflection upon her; that this memo is directed to Jerry Thompson; and that this is an issue for Jerry Thompson to deal with; and that I didn't see this as being a, necessarily, reflection upon her performance; and that nobody was concerned about her performance. The issue at hand was Jerry Thompson's performance or lack of performance.

Mascio Dep. at 33. Mascio testified that he attempted to reach Monroe twice by telephone. *See* Mascio Dep. at 60–61. Monroe claims Mascio never reported back to her. Nonetheless, she was informed of Mascio's response from the General Manager. No further action was taken by either Monroe or Host Marriott.

On October 1, 1996, plaintiff was notified that her position as merchandise Manager for the Atlantic City branch was being eliminated due to corporate restructuring. Other positions were also eliminated at the same time. Notwithstanding that her position was being eliminated, Monroe received a raise in October. Monroe's termination went into effect on November 1, 1996. Her supervisor, Thompson, also lost his job at around the same time.

Monroe claims that her position was not eliminated because another employee assumed her duties after she left. She believes that Host Marriott terminated her in retaliation for her attempts to invoke her rights under the GFT.

## II. DISCUSSION

### A. *Defamation*

■ Under New Jersey law, defamation is defined as: (1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage. *Feggans v. Billington*, 291 N.J.Super. 382, 391, 677 A.2d 771 (1996). Monroe bases her defamation claims against O'Hare and Crowley–Jacinto on the Memo, dated January 4, 1996, and its verbatim reading by Thompson at the management group meeting in Atlantic City on January 5, 1996. Monroe's complaint was filed on May 9, 1997. The statute of limitations for claims of defamation in New Jersey is one year. N.J.S.A § 2A:14–3. Therefore, defendants claim that Monroe's claims for defamation are time barred since the only specifically alleged events of publication occurred prior to May 6, 1996.

In Count One of her complaint, Monroe alleges defamation by O'Hare for his actions in authoring the Memo. The complaint notes only one specific incident of publication by O'Hare—distribution of the Memo to those individuals listed on the distribution list. The other allegations of publication do not identify O'Hare as the publisher. In her deposition, Monroe was unable to identify any examples of publication by O'Hare be-

yond the distribution of the January 4, 1996 Memo.[1]

In Count Two of her complaint, Monroe alleges defamation against defendant Crowley–Jacinto for her actions in providing input for O'Hare's preparation of the Memo.[2] The complaint again identifies only one specific incident of publication by Crowley–Jacinto— that on or before the January 4, 1996 Memo, she assisted O'Hare in preparing the Memo by giving her input on the Atlantic City branch's performance. The other allegations of publication do not identify Crowley–Jacinto as the publisher and Monroe fails to identify any other specific examples of publication.

■ The statute of limitations in defamation actions is to be strictly construed. *Miele v. Rosenblum,* 254 N.J.Super. 8, 12, 603 A.2d 43 (App.Div.1991). In *Miele,* the defendant was charged with publishing two articles on specified dates and thereafter "continued to publish facts about plaintiff which placed plaintiff in a false light." *Id.* at 10, 603 A.2d 43. In granting the defendant's motion for summary judgment, the *Miele* court held that "[i]n the case of a complaint charging defamation, the plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Id.* Because the plaintiff in *Miele* failed to specify any facts with regard to the allege subsequent defamatory publications, the Appellate Division held that the statute of limitations period relevant to the two specifically pled instances of defamation was applicable to the entire complaint.

■ Monroe claims that the alleged defamatory statements of the Memo were repeated beyond the May 9, 1996 statute of limitations period. Her complaint alleges republications "at least until the end of August 1996." Compl. at ¶¶ 23, 36. However, as demonstrated above, the only specifically pled allegations against O'Hare and Crowley–Jacinto relate to instances which occurred in January 1996. The only specific

repetition occurring after May 9, 1996 which Monroe could identify when questioned in her deposition took place when she herself faxed the Memo to an internal auditor of Host Marriott. We do not feel such "self-publication" can properly be considered for purposes of determining whether the statute of limitations bars Monroe's claims of defamation. *See Mollick v. Beverly Enterprises, Inc.,* 1997 WL 634496, *3 (E.D.Pa. Sept.29, 1997) (holding that "compelled self-publication does not satisfy the publication element for a defamation action"); *DiPietro v. Jefferson Bank,* 1993 WL 101353, *1 (E.D.Pa. April 1, 1993); *Lynch v. Mellon Bank of Del.,* 1992 WL 51880, *3 (Del.Super. March 12, 1992). Furthermore, Monroe's claim that some Marriott Host employees expressed their sympathy about the statements made in the Memo at some unspecified time, possibly after May 9, 1996, is not sufficient to hold O'Hare and Crowley–Jacinto vicariously liable for the publication by unspecified third parties. *See Kramer v. Monogram Models, Inc.,* 700 F.Supp. 1348 (D.N.J.1988), *rev'd on other grounds,* 875 F.2d 66 (3d Cir.1989) (republication by third parties within one-year limitations period not sufficient for meeting statute of limitations). Because plaintiff has failed to state with any specificity when any of the alleged defamatory Memo statements were republished after May 9, 1996 (or even after January 5, 1996), her claims in Counts One and Two must be dismissed as they are barred by New Jersey's one year statute of limitations.

■ Even if Monroe's defamation claims were not barred by the statute of limitations, O'Hare and Crowley–Jacinto are clearly protected in making the alleged statements by a qualified privilege. Under New Jersey law, a publisher of a defamatory statement is protected from liability if the statement is made for a common interest shared between the publisher and the recipient. *Gallo v. Princeton Univ.,* 281 N.J.Super. 134, 142, 656 A.2d 1267 (App.Div.1995), *cert. denied,* 142 N.J. 453, 663 A.2d 1359 (1995); *Williams v.*

---

1. Thompson, not O'Hare, read the memo at the January 5, 1996 meeting, thus all allegations of slander against O'Hare are misplaced.

2. Count Two is incorrectly titled as being pled against O'Hare. The cause of action is clearly directed against Crowley–Jacinto.

*Bell Tel. Labs., Inc.*, 132 N.J. 109, 121, 623 A.2d 234 (1993); *Coleman v. Newark Morning Ledger Co.*, 29 N.J. 357, 376, 149 A.2d 193 (1959); Restatement (2d) of Torts §§ 593, 594, 596.

Publication of the type of routine office performance memorandum at issue here, even where critical of a particular department or employee, is protected by the qualified privilege. *See Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 562, 569 A.2d 793, 806 (1990); *Kass v. Great Coastal Express, Inc.*, 291 N.J.Super. 10, 19, 676 A.2d 1099 (App.Div.1996), *cert. granted*, 149 N.J. 34, 692 A.2d 48 (1997); Restatement (2d) of Torts §§ 594, 595. O'Hare was simply performing necessary supervisory duties in preparing the memo. He was entitled to rely on the reports of his colleague, whose job it was to do walk-throughs of the Atlantic City stores and hold discussions with Thompson about the division's progress. *See Jorgensen v. Pennsylvania R. Co.*, 25 N.J. 541, 138 A.2d 24 (1958). The statements in the Memo do nothing but identify business problems occurring in the Atlantic City branch in an effort to rectify them. O'Hare is therefore protected from liability by the qualified privilege. Crowley–Jacinto was also performing her role while reporting to O'Hare her observations of the Atlantic City division. As such, her "report to someone with a 'corresponding interest' in the information" is also protected by the qualified privilege. *Fees v. Trow*, 105 N.J. 330, 342, 521 A.2d 824 (1987). Thus, because Monroe's claims are time-barred and the defendants protected by the qualified privilege, we will grant summary judgment to O'Hare and Crowley–Jacinto on Monroe's defamation claims in Counts One and Two.

### B. *Breach of Contract*

Count Three of plaintiff's complaint claims that Host violated Monroe's "employment contract" when it eliminated her position and terminated her. Host Marriott responds that Monroe was an at-will employee and that no "contract" was breached when it terminated her services. Monroe alleges that she is not an at-will employee because Host's one-page GFT is part of an employment contract between herself and Host. Exh. B to Compl. However, Monroe has not identified any express or implied contract of which the GFT might be a part.

■ The only breach alleged is that Host failed "to respond to her complaints about the defamatory conduct or to correct the untrue statements which it made about her job performance." Compl. at ¶ 43. However, it is undisputed that she discussed the alleged untrue statements with senior Host management and that management considered her complaint. Mascio testified that he tried to allay Monroe's concerns by assuring her that the Memo was not directed at her and was not intended as a bad reflection of her work. Furthermore, Monroe has admitted that she took no additional steps in the GFT process after making her initial complaint, even though she was aware of Mascio's response that her complaint was not serious. Thus, the GFT was complied with.

■ Even if the GFT had not been complied with, it is not an enforceable contract. The one page GFT is quite distinguishable from the extensive employment policy manual at issue in *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 99 N.J. 284, 491 A.2d 1257, *modified*, 101 N.J. 10, 499 A.2d 515 (1985), found to impose limitations on discharge based on its five pages of termination procedures. *See Brunner v. Abex Corp.*, 661 F.Supp. 1351, 1355 (D.N.J.1986). Under *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified by*, 101 N.J. 10, 499 A.2d 515 (1985), an employment manual can be construed as establishing a contract under limited circumstances. It has been recognized by other courts in this district that *Woolley* "does not, of course, render every provision in an employee manual to be an implied contract. . . . [T]here remains a distinction as to whether the content of the employee manual is an expression of the Company's philosophy or an implied promise sufficient to predicate a contract upon." *Levinson v. Prentice–Hall, Inc.*, 1988 WL 76383 *1 (D.N.J. July 22, 1988). In *Levinson*, the Court found no implied contract because the policy lacked the specificity and explicit terms of the job security provisions involved in *Woolley*. *See Marzano v. Com-*

*puter Science Corp. Inc.,* 91 F.3d 497, 512 (3d Cir.1996) (two-page memorandum insufficient to state claim under *Woolley* ). We find that the GFT is similarly lacking in specificity and explicit terms regarding job security and termination policies and is therefore not an employment contract capable of being breached.

Because we find that the GFT was complied with and there was no enforceable contract with Monroe to breach, we will grant summary judgment to Host Marriott on Count Three of her complaint.

### C. *Wrongful Termination*

Count Four of Monroe's complaint alleges that Host Marriott wrongfully discharged her in violation of New Jersey law. In New Jersey, "an employer may fire an employee for good reason, bad reason, or no reason at all under the employment at-will doctrine." *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546, 552 (1994). Employment is presumed to be at will unless an employment contract states otherwise. *See Varrallo v. Hammond,* 94 F.3d 842, 845 (3rd Cir.1996) (citing *Witkowski,* 643 A.2d at 552–53); *Pitak v. Bell Atlantic Network Servs. Inc.,* 928 F.Supp. 1354, 1370 (D.N.J. 1996); *Bernard v. IMI Sys. Inc.,* 131 N.J. 91, 618 A.2d 338 (1993); *Pierce v. Ortho Pharm. Corp.,* 84 N.J. 58, 65–66, 417 A.2d 505 (1980); *Piechowski v. Matarese,* 54 N.J.Super. 333, 344, 148 A.2d 872. 54 N.J.Super. 333, 148 A.2d 872 (App.Div.1959); *see also McQuitty v. General Dynamics Corp.,* 204 N.J.Super. 514, 519–20, 499 A.2d 526 (App.Div.1985). Here, Monroe was an employee at-will and Host Marriott was entitled to terminate her when it eliminated her position.

Monroe apparently bases her wrongful termination claim, like her breach of contract claim, on the existence of the GFT. As we have already noted however, the GFT is not an enforceable contract. Furthermore, unlike the policy manual in *Woolley,* the GFT does not address discipline, job security or termination policies. Instead, it merely sets forth the fair treatment process that an employee is entitled to and the procedures that should be followed when making a grievance. The GFT does nothing to modify Monroe's

status as an employee at-will. *See Tripodi v. Johnson & Johnson,* 877 F.Supp. 233, 238 (D.N.J.1995) (suggestion and complaint credo "is similar to employer policy statements which New Jersey courts (or federal courts applying New Jersey law) have held as a matter of law cannot create a contractual obligation and cannot abrogate the employee at will doctrine"); *Maietta v. United Parcel Serv. Inc.,* 749 F.Supp. 1344, 1361 (D.N.J. 1990), *aff'd,* 932 F.2d 960 (3d Cir.1991); *Catalane v. Gilian Instrument Corp.,* 271 N.J.Super. 476, 495, 638 A.2d 1341 (App.Div. 1994), *cert. denied,* 136 N.J. 298, 642 A.2d 1006 (1994); *Kane v. Milikowsky,* 224 N.J.Super. 613, 616, 541 A.2d 233, 235 (App. Div.1988). A wrongful discharge claim cannot be made on an alleged breach of employer policies which merely suggest standards set by the employer. Monroe has failed to identify any Host Marriott contract or policy manual that in any manner restricts Host Marriott's ability to terminate its employees at will.

Host Marriott claims that Monroe's position was eliminated as a result of a restructuring of operations following a decline in profits at the Atlantic City branch. Monroe was aware that this was the reason for her termination and she knew that other positions were similarly eliminated. An employer is entitled to eliminate employee positions for valid economic reasons. *See Brunner v. Abex Corp.,* 661 F.Supp. at 1355 n. 5 ("It is hard to conceive that the Supreme Court of New Jersey intended to prevent a company from cutting its work force due to economic factors"); *Linn v. Beneficial Commercial Corp.,* 226 N.J.Super. 74, 543 A.2d 954 (App. Div.1988) ("decision to eliminate Plaintiff's position for valid economic reasons did not violate any express or implied promise"). Monroe claims that, after she left, another employee assumed some of her old duties. Therefore, she contends that her position was not eliminated as she was told. However, it is common when employers eliminate a position to reassign some of the duties of that position to another employee. Furthermore, as we have already stated, Host Marriott did not need to have a reason to terminate Monroe; she was an employee at-will. There-

fore, we find that Host Marriott's decision to terminate Monroe does not arise to wrongful discharge. Accordingly, we will grant summary judgment to Host Marriott on Count Four of Monroe's complaint.

## III. CONCLUSION

For the foregoing reasons, we will grant summary judgment to the defendants on all four of Monroe's claims. Accordingly, we will dismiss her complaint with prejudice.