In re: FIRST CONNECTICUT
CONSULTING GROUP,
INC., Debtor.

SWJ Holdings, LLC, Appellant,

First Connecticut Holding Group, LLC
II, First Connecticut Holding Group,
LLC III, First Connecticut Holding
Group, LLC X, First Connecticut
Holding Group, LLC XI, First Con-
necticut Holding Group, LLC XIII,
Debtors,

v.

Peter Mocco, Lorraine
Mocco, Appellees,

United States Trustee, Trustee,

Cynthia Licata, James Licata,
Intervenors.[1]

No. 06–2035–bk.

United States Court of Appeals,
Second Circuit.

Nov. 15, 2007.

1. The Clerk of the Court is directed to amend the official caption as noted above.

Brian J. Molloy (Kevin J. Roddy, Willard C. Shih, on the brief), Wilentz, Goldman & Spitzer, P.C., Woodbridge, NJ, for Appellant.

James A. Scarpone (Matthew E. Moloshok, Hellring Lindeman Goldstein & Siegal, LLP, on the brief), Scarpone Staiano LLC, Newark, NJ, for Appellees.

PRESENT: Hon. ROGER J. MINER, Hon. REENA RAGGI, Circuit Judges, Hon. JED S. RAKOFF, District Judge.[2]

## SUMMARY ORDER

SWJ Holdings ("SWJ"), as assignee of James Licata and First Connecticut Consulting Group's interest in the debtor First Connecticut Holding Group LLCs ("LLCs"), appeals from a judgment of the United States District Court for the District of Vermont, *In re First Connecticut Consulting Group, Inc.,* 340 B.R. 210 (D.Vt.2006) (William K. Sessions, *Chief*

---

**2.** The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

*Judge* ), affirming a decision of the Bankruptcy Court, *In re First Connecticut Consulting Group, Inc.,* No. MISC. 04–101, 2004 WL 1676211 (Bankr.D.Vt. July 27, 2004) (Colleen A. Brown, *Bankr. Judge* ), granting appellees Peter and Lorraine Mocco's motion to dismiss the Chapter 11 petitions filed by intervenor James Licata on behalf of the LLCs. We assume the parties' familiarity with the facts and the record of prior proceedings, including the thoughtful opinions of the district and bankruptcy courts, which we reference only as necessary to explain our decision.

Essentially, SWJ's appeal challenges two conclusions reached by both the bankruptcy and district courts: (1) that Peter and Lorraine Mocco effectively owned the LLCs at the time the bankruptcy petitions were filed on behalf of the LLCs, and (2) that James Licata caused the LLCs' bankruptcy petitions to be filed in bad faith. The ownership question may be considered in three parts: (a) do certain agreements between the Moccos and Licatas evince these parties' intent to have the LLCs act as nominees of the Moccos in holding certain real property, (b) did the Moccos satisfy conditions precedent to the reconveyance of this real property to them, and (c) are the agreements unenforceable as a matter of public policy. Resolution of these issues required the district and bankruptcy courts to resolve disputed questions of both law and fact. We review their resolution of legal questions *de novo,* but we defer to the bankruptcy court's findings of fact—made after an eight-day trial—unless clearly erroneous. *See In re Vouzianas,* 259 F.3d 103, 107 (2d Cir. 2001).

### 1. *Ownership of the LLCs*

a. *The Parties' Intent for the LLCs to Hold Property as Nominees*

 Because the transfer documents do not unambiguously indicate the LLCs'

role in holding the real properties at issue, the bankruptcy court appropriately looked to the totality of the circumstances to determine the parties' intent. *See, e.g., Marchak v. Claridge Commons, Inc.,* 134 N.J. 275, 282, 633 A.2d 531, 535 (1993). The bankruptcy court's conclusion that the parties intended the LLCs to take title only as nominees of the Moccos finds ample support in the fact that (1) no payment was made to the Moccos in exchange for their transfer of title to the LLCs, (2) neither Licata nor the LLCs contributed any of their own funds toward the debt obligation incurred in connection with this transfer or even to the maintenance of the transferred properties, and (3) Peter Mocco continued to manage and maintain the properties and retained their use to his benefit. Further support for the bankruptcy court's conclusion derived from (4) the three-page agreement drafted by Peter Mocco and signed by James Licata, as well as the escrow agreement signed by Mocco and Licata, both of which evidenced the parties' intent to transfer titles to the LLCs only to satisfy a condition of certain bridge financing essential to the Moccos' procurement of bankruptcy relief; once the Moccos secured long-term financing and retired the bridge financing, the real property titles were to be reconveyed to the Moccos. Similarly evidencing the parties' intent was (5) a written directive by Licata to attorney Pieter de Jong instructing him to forward to Peter Mocco certain documents, including Certificates of Interest and Certificate Ledgers, necessary to effect the contemplated reconveyance. Although Licata subsequently attempted to repudiate these agreements and block the certificates' transfer, we agree with the bankruptcy court that, under New Jersey law, possession of a stock certificate is not required to establish ownership rights to a closely held corporation, to which the

LLCs are appropriately analogized, and accordingly that the aforementioned agreements and written directive effectuated the transfer of the LLCs back to Mocco. See, e.g., *Piechowski v. Matarese*, 54 N.J.Super. 333, 343, 148 A.2d 872, 877 (Super.Ct.App.Div.1959); see also *Hill v. Warner, Berman & Spitz, P.A.*, 197 N.J.Super. 152, 163, 484 A.2d 344, 349 (Super.Ct.App.Div.1984).[3]

In sum, we identify no legal or factual error in the bankruptcy and district court conclusions that the LLCs acted as the Moccos' nominees in holding the real property titles.

### b. Satisfaction of Conditions Precedent to Reconveyance

SWJ submits that the Moccos failed to satisfy two conditions precedent to reconveyance of any real property title: (1) the full repayment of the bridge indebtedness, and (2) maintenance of a tax-neutral position for the Licatas. Neither point merits lengthy discussion.

■ Like the bankruptcy and district courts, we construe the escrow agreement, by its terms, to contemplate piecemeal reconveyance of individual property titles as segments of the bridge indebtedness were discharged. This construction comports with the irrevocable limited power of attorney granted by Licata to de Jong, which authorized de Jong to endorse and surrender the LLCs' member shares *seriatim* as bridge debt obligations linked to each property were refinanced.

As for the tax-neutrality argument, we concur in the district court's conclusion that, throughout this litigation, SWJ has failed to specify—much less prove—any

tax liability incurred by the Licatas that can be attributed to the action or inaction of the Moccos.[4]

### c. Public Policy Concerns

SWJ submits that, even if agreements between the parties allow the Moccos to claim ownership of the LLCs and a right to reconveyance of real property titles, judicial estoppel should bar the enforcement of any such agreements as against public policy. SWJ charges that the Moccos, by not revealing their reconveyance agreement to the New Jersey bankruptcy court, secured their Chapter 11 reorganization through a fraud on that court and their creditors.

■ Like the district and bankruptcy courts, we conclude that this argument is unconvincing for several reasons. First, even if the Moccos should have been more forthcoming with the bankruptcy court about the reconveyance agreement, the record fails to demonstrate the requisite clear inconsistency in their positions or risk of inconsistent results necessary to warrant the application of judicial estoppel to this case. See *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir.2005). Second, this conclusion is reinforced by the fact that the New Jersey bankruptcy court has itself refused to reopen the Moccos' proceedings on grounds of the alleged fraud, and neither the bankruptcy trustee nor any of the Moccos' creditors has complained of this decision. Third, SWJ's standing to complain that the reconveyance constitutes a fraudulent post-petition conveyance is doubtful. See 11 U.S.C. § 549 (limiting standing to trustee); *In re Housecraft Ind., USA, Inc.*, 310 F.3d 64, 70 (2d Cir.2002) (noting extension of stand-

---

**3.** Because SWJ did not challenge the bankruptcy court's application of New Jersey law in this manner before the district court, we deem any arguments to the contrary on this appeal as waived. *See, e.g., Caiola v. Citi-*

*bank, N.A., New York*, 295 F.3d 312, 327 (2d Cir.2002).

**4.** It appears undisputed that James Licata has not filed tax returns since 1998.

ing to creditors' committee and individual creditors). Even if SWJ could clear all these hurdles, however, it confronts a fourth that it cannot surmount on the record before this court: the doctrine of in pari delicto. SWJ's claims derive from the Licatas, who participated fully in the Mocco bankruptcy without ever disclosing the fraudulent concealment now alleged. In these circumstances, the bankruptcy court acted well within its discretion in concluding that equity should not intervene to allow SWJ to charge a fraud in which its predecessor was a knowing and voluntary participant rather than a victim. *See generally BrandAid Mktg. Corp. v. Biss*, 462 F.3d 216, 218 (2d Cir.2006). Indeed, there is little reason to allow SWJ to invoke public policy to remedy a purported fraud on the Moccos' creditors by securing a ruling that would benefit not those creditors but only SWJ and the Licatas' creditors.

### 2. *Bad Faith*

■ We review the decision of a bankruptcy court to dismiss a petition for bad faith for abuse of discretion, and we identify none in this case. See, e.g., *In re C–TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir.1997). As the district court aptly observed, SWJ's argument that the petitions were filed in good faith "is simply a disagreement with the Bankruptcy Court's findings of fact that Licata had no ownership interest in the Debtor LLCs and knew it at the time he caused them to file for Chapter 11 protection." *In re First Conn. Consulting Group, Inc.*, 340 B.R. at 222. Even if Licata owned the LLCs at the relevant time, however, the bankruptcy court's observation that "none of this litigation supports the assertion that the LLCs had financial difficulties or, for any reason, required a bankruptcy reorganization," *In re First Conn. Consulting Group, Inc.*, 2004 WL 1676211, at * 12, by itself warrants dismissal for bad faith, because

the use of Chapter 11 petitions "not to reorganize, but to relitigate" the question of ownership of the LLCs is an "impermissible use of Chapter 11," *In re C–TC 9th Ave. P'ship*, 113 F.3d at 1310–11 (internal quotation marks omitted).

Accordingly, the judgment of the district court is AFFIRMED.